1          UNITED STATES DISTRICT COURT
                  DISTRICT OF MINNESOTA
2

3  ------------------------------------------------------------
                                    )
   Reporters Committee for          )   File No. 20-mc-00082
4  Freedom of the Press,            )           (PJS/TNL)
                                    )
5          Plaintiff,               )
                                    )   Minneapolis, Minnesota
6  v.                               )   October 22, 2021
                                    )   11:00 a.m.
7  United States of America,        )
                                    )
8          Defendant.               )
   ------------------------------------------------------------
9

10         BEFORE THE HONORABLE PATRICK J. SCHILTZ
                UNITED STATES DISTRICT COURT JUDGE
11                **(VIDEO STATUS CONFERENCE)**

12  **APPEARANCES**
     **For the Plaintiff:**         **BALLARD SPAHR, LLP**
13                                   **MARY ANDRELEITA WALKER, ESQ.**
                                     80 S. 8th St., #2000
14                                   Minneapolis, Minnesota 55402

15                                   **SAMUELSON CLINIC, BERKELEY LAW
                                     SCHOOL**
16                                   **CATHERINE CRUMP, ESQ.**
                                     **MEGAN GRAHAM, ESQ.**
17                                   Law Building, Suite 353
                                     Berkeley, California 94720

18   **For the Defendant:**          **UNITED STATES ATTORNEY'S OFFICE**
                                     **TIMOTHY RANK, AUSA**
19                                   **DAVID FULLER, AUSA**
                                     300 S. 4th St., #600
20                                   Minneapolis, Minnesota 55415

21   Court Reporter:                 DEBRA BEAUVAIS, RPR-CRR
                                     300 S. 4th St., #1005
22                                   Minneapolis, Minnesota 55415

23         Proceedings recorded by mechanical stenography;
     transcript produced by computer.
24

25

```
1                    P R O C E E D I N G S

2                      IN OPEN COURT

3              THE LAW CLERK:  United States District Court for

4     the District of Minnesota is now in session, the Honorable

5     Patrick J. Schiltz presiding.

6              THE COURT:  Good morning, everyone.  We're here

7     today for a status conference in a case that's entitled In

8     re Application of the Reporters Committee for Freedom of the

9     Press to unseal certain search warrant materials.  The case

10    is 20-mc-82.

11             If I could have just everybody make their

12    appearances, please.  Let's begin with the plaintiff's

13    attorneys.

14             MS. GRAHAM:  Megan Graham on behalf of petitioner

15    Reporters Committee for Freedom of the Press.

16             MS. WALKER:  Good morning, Your Honor.  Aleita

17    Walker with Ballard Spahr.

18             MS. CRUMP:  Good morning, Your Honor.  Catherine

19    Crump.  And with us today are a couple of our students.  Is

20    it all right if they introduce themselves?

21             THE COURT:  Sure.

22             MR. ABRAHMS:  Good morning.  Johnny Abrahms with

23    petitioner Reporters Committee for Freedom of the Press.

24             THE COURT:  Good morning.

25             MS. DEL ROSARIO:  Good morning.  Daniela del
```

1   Rosario Wertheimer with Reporters Committee for Freedom of

2   the Press.

3            THE COURT:  And good morning.

4            Is that everybody on the plaintiff's side?

5            Then Mr. Rank.

6            MR. RANK:  Thank you, Your Honor.  Timothy Rank

7   appearing on behalf of the United States.  And along with

8   me -- I don't want to steal his thunder -- but David Fuller

9   is here as well.

10           THE COURT:  And good morning to both of you as

11   well.

12           Then Lou Jean Gleason is here from my court, and

13   my law clerk and extern are listening in as well.

14           So, let's see, Ms. Graham, maybe you can bring me

15   up to date on where we're at and what you propose for next

16   steps.

17           MS. GRAHAM:  Absolutely.  As Your Honor is aware,

18   in December 2020, the Reporters Committee initially filed an

19   application with this court to unseal and docket certain

20   Stored Communications Act search warrant applications.  The

21   application generally sought to unseal dockets and the

22   underlying material in SCA warrant cases that were filed

23   after January 1st, 2018.

24           On February 24th of this year, we held a status

25   conference during which RCFP learned that at least some of

1    the relief that was sought in the application was already

2    regularly occurring in the district.

3         The Court denied the application without prejudice

4    and encouraged RCFP and the government to talk with each

5    other and the Clerk's Office to determine what current

6    practices are and ways in which the public's right of access

7    to the courts can be better vindicated.

8         In the ensuing months, RCFP and the U.S.

9    Attorney's Office have had numerous calls and email

10   exchanges.  Some of those have included the Clerk's Office.

11        I want to note that both the Clerk's Office and

12   the U.S. Attorney's Office have been very helpful in

13   explaining elements of the process that aren't immediately

14   apparent to outside observers.  And over that time, RCFP has

15   gained a much better and more granular sense of the

16   docketing and sealing practices related to search warrants

17   and surveillance orders a little more broadly.

18        So last week we filed the joint letter setting

19   forth two changes that RCFP believes would improve

20   transparency and access.  The government doesn't oppose

21   these changes.  And it's our understanding that the Clerk's

22   Office believes they're feasible.

23        So the first of those changes would be to add

24   flags -- I think that's the official ECF terminology -- to

25   the dockets for all surveillance applications.  This would

1   include Rule 41 search warrants, SCA warrants, Section

2   2703(d) orders, pen register and trap and trace orders,

3   tracking device warrants and All Writs Act orders.

4            Applications that are filed under multiple

5   authorities would have each appropriate flag for whatever

6   authority is invoked in the application, and this would be

7   on a perspective basis.

8            The change from RCFP's perspective would enable

9   the public to differentiate between dockets of various types

10  of requests and to gain information including how many --

11  just, like, the baseline question of how many of each type

12  of application is filed every year.

13           The second change would be to add clearer language

14  to the court's public website about the availability of the

15  materials and how to access them.

16           Right now when a member of the public tries to

17  access the underlying materials in an unsealed warrant case,

18  there's a warning that says you do not have permission to

19  view this document.  The materials are, however, available

20  in the Clerk's Office at the public terminal where they can

21  be viewed for free or printed out for fees that mirror what

22  an ECF user would pay for digital access.

23           It's our understanding that that warning is hard

24  coded into CM-ECF, so the Clerk's Office can't change it,

25  which is why we're hoping that the changes to the court's

1    public website would clarify what the access actually is and

2    kind of hopefully counteract the confusing language on ECF.

3            So those are the two changes that we have proposed

4    and, again, the government doesn't oppose.  And we're

5    looking for the Court's help in how to effectuate those

6    changes, because there have to be some behind-the-scenes

7    changes to the system.

8            THE COURT:  Okay.  Let me just talk through these

9    categories.  Just, again, I probably said this last time we

10   were together -- I've worked on 200 cases since we last

11   talked, so I've probably forgotten a lot of what we've

12   talked about -- so Rule 41, those are just basic search

13   warrants, right, your basic application to search a house or

14   something?

15           MS. GRAHAM:  Right.

16           THE COURT:  And right now my understanding is --

17   Lou Jean, you can help make the record clear on this, but we

18   do open files on all those, right, every time there is a

19   search warrant applied for?  Lou Jean, can you hear me?

20           LOU JEAN GLEASON:  I can.  Sorry, Judge.  Yes, we

21   do.

22           THE COURT:  Okay.  Do you know, are those opened

23   at the time the search warrant is applied for or only after

24   they're granted?  Do you know how the timing of that works?

25           LOU JEAN GLEASON:  I believe they're opened after

1    it's granted.

2              THE COURT:  Okay.  So if it's denied, your

3    understanding is it's just the papers are returned to the

4    government?  We never open anything?

5              LOU JEAN GLEASON:  That's my understanding.

6              THE COURT:  All right.  Mr. Rank, is that the way

7    you understand it works?

8              MR. RANK:  It is, Your Honor.  I believe that is

9    accurate.

10             THE COURT:  Okay.  So at least under our current

11   practice if a search warrant application is denied, there's

12   nothing we can flag because there's no file, right?

13             MR. RANK:  I think that's right, Your Honor.

14             THE COURT:  Okay.  But if it's granted, though, we

15   do have an ECF file and we can flag that with appropriate

16   language, right?  Lou Jean, there's no problem from our

17   perspective on that?

18             LOU JEAN GLEASON:  That's correct.

19             THE COURT:  Okay.  And in terms of a warrant

20   issued pursuant to the Stored Communications Act, is that

21   basically the same as what we just talked about?

22             MR. RANK:  It is, Your Honor.

23             THE COURT:  Okay.  So if granted we have a case

24   file somewhere and there is nothing on ECF?  There is not

25   even a sealed docket on ECF, right?

1         LOU JEAN GLEASON:  That's my understanding.

2         THE COURT:  Okay.  Now, you mentioned as a

3    separate category orders pursuant to 2703(d).  Is that just

4    an order granting an application of the Stored

5    Communications Act or is that something different?

6         MS. GRAHAM:  They're slightly different.  What we

7    refer to as 2703(d) orders are not warrants, but they are

8    court orders permitting the government to obtain certain

9    categories of information from third-party providers.  So

10   it's all within the Stored Communications Act, but it's a

11   different provision of Section 2703 than the warrant

12   provisions.

13        THE COURT:  Okay.  So is there still an -- I

14   apologize, as a district judge I don't deal with any of this

15   stuff, so this is all unfamiliar to me.  So is there an

16   application for these orders?

17        MS. GRAHAM:  Yes, Your Honor.

18        THE COURT:  And how do we process those

19   applications?  Do we process them like standard search

20   warrant applications or in some different way?

21        MR. RANK:  Your Honor, they are actually -- sorry,

22   Lou Jean.  They get processed slightly differently because

23   they get a case number when the application is made.  And so

24   when it is submitted to the magistrate judge for signing,

25   there's a case number.  It's electronically filed, and I

1     think that starts with the application filing.

2               And just by way of background, Your Honor, Section

3     2703 creates sort of three categories of being able to

4     obtain information relating to electronic communication

5     services, remote computing services:  what you can do with a

6     subpoena, what you can get with a search warrant, and then

7     something slightly in between, which is that 2703(d) order.

8     It requires a little bit more of a showing than a subpoena

9     but less than probable cause.  And you get sort of middle

10    ground information -- email headers, things like that --

11    that are not available with the subpoena but not the content

12    that you would get with a search warrant.

13              THE COURT:  Okay.  So I assume, then, that we

14    would flag these things.  The letter says orders, but we

15    would be flagging the applications, right?

16              LOU JEAN GLEASON:  That's my understanding.

17              THE COURT:  Applications for orders, okay.

18              And then, again, it sounds like there's no problem

19    with that from our perspective; is that right, Lou Jean?

20              LOU JEAN GLEASON:  That's correct.

21              THE COURT:  Okay.  And then another category that

22    you mentioned that's in your letter is orders under the All

23    Writs Act.  I had to ask my law clerk to remind me what the

24    All Writs Act was -- I mean, I've heard of it, obviously --

25    and her answer was it's something that litigious prisoners

1    use.  I take it that's not the category.  Then I went to

2    Wikipedia and found out that this is what the government has

3    used to try to get, like, Apple to open up Apple iPhones and

4    things like that.  Right?

5         Mr. Rank, has your office used the All Writs Act

6    as sort of a search warranty-type thing?

7         MR. RANK:  So very seldom, Your Honor.  I think I

8    can count on probably one hand the time that it's been done.

9    My recollection in the district is we've used them for

10   getting information from providers like Uber who have

11   concluded or at one point in time took the position that

12   they were neither an electronic communications service nor a

13   remote computing service and, therefore, 2703 did not apply

14   to them.  They have actually changed they're position on

15   that, but there was a time period where we needed to use the

16   All Writs Act for purposes of getting information back from

17   Uber.

18        THE COURT:  Okay.  How would that work

19   procedurally, then?  Do you file an application for a writ

20   basically?

21        MR. RANK:  Yes, file an application for a writ

22   with the duty magistrate.  And Lou Jean would know better

23   than I the answer to this question, whether an ECF file is

24   created upon the application for it.  We've done so few of

25   them.  And, frankly, I can't remember the last time we've

1   done one.  It may have even been done before the new

2   application and case number obtaining procedures that were

3   started.  So, Lou Jean, do you know?

4        LOU JEAN GLEASON:  I didn't look those up, but

5   they would be created the same as a 2703, so there would be

6   a case opened.

7        THE COURT:  Okay.  So we would need some way to

8   describe -- obviously, it's not every application for an All

9   Writs Act.  It's the quasi search warranty government

10  obtaining information for use in a criminal investigation is

11  what we're talking about.  Okay.  So all that sounds doable.

12       Orders for pen registers and trap and trace

13  devices.  Now, that's handled differently, right, Lou Jean?

14       LOU JEAN GLEASON:  Yes.  Those are sealed cases

15  that are not unsealed.

16       THE COURT:  Okay.  So by "sealed cases" does that

17  mean that if -- can somebody go online and actually see a

18  number there that says this is a sealed case and that's all

19  they see, is kind of a splash thing, or do you not even see

20  that?  Is it invisible to the public?

21       LOU JEAN GLEASON:  If they knew the case number,

22  it would say this case is sealed.  That's all they will see.

23       THE COURT:  So can we flag such a --

24       LOU JEAN GLEASON:  No.

25       THE COURT:  Okay.  So we would have to change the

1    way we handle those then --

2              LOU JEAN GLEASON:  Correct.

3              THE COURT:  -- in order to flag them.  Okay.

4         So, Mr. Rank, Ms. Graham said the government

5    doesn't have any objection to flagging these.  What do you

6    envision we would do to make them flaggable?

7              MR. RANK:  Well, I guess our perspective is we

8    wouldn't have any trouble flagging them.  But if it requires

9    a change in the way that the sealed cases are done, we

10   probably would have an objection to that.

11             I think what we don't have an objection to is some

12   sort of -- and I think this is what the Reporters Committee

13   was looking for -- some methodology of figuring out how many

14   types of process were used in a particular year.

15             A lot of our discussion has been how has it been

16   the outside can figure out -- public can figure out how many

17   pen traps have been done in a particular year, and we

18   wouldn't have an objection to some sort of recordkeeping

19   like that.

20             But anything that would, for example, indicate

21   what the pen traps were for -- particular telephone number,

22   a particular account number -- we have an objection to that

23   being public because they are sealed and they're sealed by

24   operation of statute.

25             THE COURT:  Okay.  So, Lou Jean, can we flag these

1    cases in a way that makes them -- I'm sorry, Ms. Crump

2    dropped off.  It rearranged all of you.  You're over here

3    now, Lou Jean.  Can we flag these in a way that we can

4    collect data on these cases, even though they're sealed?

5              LOU JEAN GLEASON:  We can collect the data

6    internally, but it wouldn't be available to the public

7    unless there was something on our website that would make

8    that information available.

9              THE COURT:  So, Ms. Graham, what are you asking --

10   with respect to -- I gather tracking device warrants,

11   they're handled the same as trap and trace kind of stuff?

12             LOU JEAN GLEASON:  Yes.

13             THE COURT:  Okay.  So what are you envisioning

14   with respect to these, which are now sealed cases, which

15   unless you know a case number you can't even get to the

16   splash screen?

17             MS. GRAHAM:  So this, I think, is where some of

18   the disagreement between the government and RCFP comes in to

19   play.  It's RCFP's position that the cases for PRTT -- pen

20   trap orders -- showed some amount of information at the time

21   of filing should be made public, should be unsealed.

22             So our vision is creating a mechanism by which

23   even though the underlying materials might remain sealed,

24   the docket would still be public at which point the flag

25   indicating that a particular case number is a PRTT request

1    would be -- the public would have that information.  It

2    would know.

3            So this would be similar to what currently happens

4    for search warrants and SCA warrants where the document

5    number isn't sealed.  Right?  So at time of filing when you

6    go to those, you can at least see the case does exist.  You

7    don't have access to any of the materials, like the entries

8    themselves or the underlying documents, but you at least

9    know that there's an MJ case that has search warrant in the

10   title of the case and where we're hoping eventually there

11   will be a flag to indicate this is a Rule 41 versus an SCA

12   search warrant.

13           THE COURT:  Okay.  So we need to change the way

14   that we handle it internally for the flags to do anybody any

15   good.

16           MR. RANK:  Your Honor, I can say that the

17   government would not have an objection to having an ECF

18   system in which the line on ECF said something to the effect

19   of application for an order for a pen trap and trace device

20   on a T-Mobile account and nothing more -- not the telephone

21   number, not the identifier or a Google account without the

22   actual identifier of who it was that we were seeking the

23   Google account for, gmail account or something like that.

24           So if the idea is that it would change the way ECF

25   looks to simply say application for pen trap order for

 1    T-Mobile account, that would not be something the government

 2    would have a problem with because it would still be sealing

 3    the underlying documents, still be consistent with the

 4    statute.  And just like a search warrant, that's kind of

 5    what you see in the order, that's what you would see.

 6          THE COURT:  So when you look at it -- when you

 7    look at one, two, three, four, five, those would all just

 8    say sealed, sealed, sealed, sealed, sealed?

 9          MR. RANK:  Exactly, but they have a title on them

10    that would reflect that it's a pen trap.  I think it would

11    be helpful -- we've been talking to the Reporters Committee.

12    They'd like a differentiation between, for example, pen

13    traps on phones, pen traps on email accounts, things like

14    that.  So it does give that more granular distinction but

15    doesn't identify the actual entity or number being tracked.

16          THE COURT:  Okay.  So is that what our basic

17    search warrant cases look like before they're unsealed, same

18    thing, in re a search warrant for -- what does one of these

19    things look like?

20          MR. RANK:  So the ECF line says whatever the

21    caption says.  So on a standard AO form for the search

22    warrant there is a caption in there and it can say a lot of

23    different things.  Sometimes it says in re Google accounts.

24    Sometimes it says the actual Google name.

25          And so the practice is going to have to be that if

1   we want to maintain some level of generality for that

2   information, the captions of the search warrants, which the

3   government has control over, will have to be done at a level

4   where it's not understandable who is being searched from the

5   caption of the search warrant.

6          THE COURT:  Okay.  So, Lou Jean, is this doable

7   from our perspective, that is just to make the pen trap type

8   of cases look like our search warrant cases while they

9   remain sealed?

10         LOU JEAN GLEASON:  It's doable, but our local

11  rules currently say that they are sealed, so that might be a

12  little change there.

13         THE COURT:  So we would have to change the local

14  rules to go from sealing the case to sealing the materials

15  filed in the case?  Is that the difference?

16         LOU JEAN GLEASON:  Yes.

17         THE COURT:  Okay.  So, I mean, I think everything

18  we've talked about then so far, as well as the language to

19  the website, that's totally fine.  We should probably make

20  the changes first and then change the language on the

21  website so we know what we're describing.

22             This is all something you don't need to litigate

23  about.  We often have members of the public who ask us to

24  change our rules and our practices, and we just work with

25  them on it.

1    I was going to say I have to talk to the Chief

2    Judge about how to do this, but I think I can talk to him,

3    even though he is recused in the litigation itself,

4    procedurally how he wants to set this up.  In eight months I

5    can talk to myself, but right now I can't talk to myself.  I

6    have to talk to Judge Tunheim.

7    So let me just work internally to figure out how

8    best to go about making these changes.  We don't need to

9    litigate about it at this point.  Obviously, if we end up

10   with a situation you think is unsatisfactory, we can move to

11   litigation, but I think we should continue to work on these

12   like we work on changes to our local rules.

13   Okay.  So that's what you've agreed upon.  What

14   about the disagreements?

15   MS. GRAHAM:  Yes.  So based on what RCFP learned

16   from the U.S. Attorney's Office and the Clerk's Office about

17   current practices, we made requests for a couple of other

18   changes to protect the public's right of access.

19   As outlined in the joint letter, there are two

20   main areas where the government and RCFP do not currently

21   agree.  The first is that -- and we alluded to this

22   earlier -- RCFP believes that the district should apply the

23   same docketing and unsealing practices that it currently

24   uses for warrants to applications for Section 2703(d) and

25   pen register trap and trace orders.

1            So as we discussed --

2            THE COURT:  The docketing part we just talked

3      about, right?

4            MS. GRAHAM:  Right.  Exactly.

5            And on the sealing side that would mean that the

6      applications, orders, and related materials should be

7      unsealed after six months absent an individualized showing

8      of the need for continued sealing.

9            THE COURT:  Is that what we do now?  I thought it

10     was up to the magistrate to make those decisions with

11     respect to the warrants.  Do we have, like, a six-month

12     policy or is it whatever the magistrate orders?

13           MR. RANK:  So, Your Honor, typically when we get a

14     search warrant, the initial sealing order, if the warrant is

15     going to be sealed and the related documents are going to be

16     sealed, are sealed for a six-month period.  And then to

17     extend that sealing period we go back and have to make a

18     showing as to why continued sealing is appropriate.

19           So the six months is, I would say, generally

20     granted at the time the search warrant is applied for.

21     Usually, because it's during the course of an investigation

22     and tipping the person that's being searched off to the

23     details of the investigation in the affidavit is sort of

24     academic that it's not a good idea to do that.  So that gets

25     granted.  It's a six-month period.

1          Arguably we could ask for a longer period at the

2     beginning.  As a district practice, our office's practice is

3     to ask for six months at the outset and then for extensions

4     depending on the situation between six months and 12 months

5     for an extension of those sealing orders.

6          THE COURT:  Okay.  So this is kind of the common

7     law of our district?  It's not a local rule or anything?

8          MR. RANK:  It is not a local rule.  It's been our

9     practice.  I think for about ten years we have required the

10    sealing orders, and they have not been unlimited.

11         There are many districts across the country that

12    automatically seal search warrants or seal them with a

13    simple application by the government and they are sealed

14    forever.  I think that's, in fact, why most of the Reporters

15    Committee cases have started around the country, was to

16    change that practice.

17         Reporters Committee actually thought we followed

18    that practice when they filed it here in Minnesota and then

19    through discussions they have learned that we do not.  So I

20    think we are on the -- I think the Court referred to us as

21    the more "sunshiny" end of that practice in the district.

22    But that has just been how we've done things here for -- Lou

23    Jean can correct me -- but over ten years.

24         THE COURT:  Okay.  So, Ms. Graham, you're not

25    challenging the way we handle Rule 41s, which is generally

1    to do a six-month subject to individual cases.  You just

2    want us to sweep in these other categories into the way we

3    handle, like, Rule 41 search warrant applications?

4              MS. GRAHAM:  Correct, Your Honor.

5              THE COURT:  Okay.  Now, Mr. Rank says there's a

6    statute that says we can't treat them that way.  This is for

7    your briefing, not for us to argue about now, but is the

8    basis of your challenge that, yeah, the statute says that,

9    but the constitution trumps or is the basis no, we don't

10   read the statute that way or both?

11             MS. GRAHAM:  So the statutory language that

12   Mr. Rank was referring to is only for pen register and trap

13   and trace orders.  And it's RCFP's position that it doesn't

14   quite say what I think the government says.  It says that

15   they will be filed under seal, but it doesn't require

16   permanent sealing.

17             THE COURT:  Okay.  What about the tracking device

18   warrants?

19             MS. GRAHAM:  So tracking device warrants -- and,

20   Mr. Rank, maybe you can provide a little more clarity -- I

21   believe those are actually handled very similarly to Rule 41

22   warrants because they are a warrant.  They're just sought

23   under a specific statutory authority that's different from

24   Rule 41 or Stored Communications Act or things like that.

25             MR. RANK:  I agree with everything Ms. Graham

1     said.  That's exactly right.  The tracking devices are

2     issued pursuant to one of the provisions of Rule 41, so we

3     treat it like a Rule 41 warrant.

4          It's the government's position that the pen trap

5     statute requires sealing.  And it's also accurate that

6     2703(d) does not have that same auto sealing language, but

7     our local rules do based on some back and forth discussion

8     that I think Your Honor was a part of when we were modifying

9     the local rules back about ten years ago to change this

10    provision.

11         THE COURT:  Okay.  I'll just nod as though I

12    actually remember that, but I don't.  That would have been a

13    long time.  This wouldn't have been one of the areas I

14    would've focused on.

15         So one of your disputes, then, is whether we can

16    treat pen register and trap and trace device applications as

17    the way as we treat warrant applications, right?

18         MS. GRAHAM:  Yes, and also the 2703(d) orders.

19         THE COURT:  2703, okay.

20         And then with respect to the All Writs Act, is

21    there any -- I mean, that's like a 250-year old statute,

22    right?  Is there anything in there about any of this?

23         MS. GRAHAM:  There's nothing in that statute about

24    sealing.  RCFP has decided at this point that this

25    litigation is not the best place to have that debate about

1    what is proper under the All Writs Act.  So for the areas of

2    disagreement the All Writs Act is not currently on the

3    table.

4                THE COURT:  Okay.  You want us to docket those

5    differently, but there's nothing else that's going to be in

6    dispute on those?

7                MS. GRAHAM:  Yes.  So, as Mr. Rank said, it's our

8    understanding those are quite rare, so on a going-forward

9    basis when they are filed to have that flagging system.

10               But as far as the other docketing and sealing

11   procedures, RCFP doesn't think this is the best venue to

12   have that discussion because it is so different.

13               THE COURT:  All right.  So broadly speaking, then,

14   you would like us to treat the pen trap applications and the

15   2703(d) orders the same way that we treat warrants and SCA

16   warrants, right?

17               MS. GRAHAM:  Yes, Your Honor.

18               THE COURT:  Okay.  Now, you use -- again, I'm

19   sorry about my ignorance about this -- in your letter you

20   talk about surveillance applications.  Is that -- oh,

21   because there's different categories under the Stored

22   Communications Act; is that right?

23               MS. GRAHAM:  Yeah.  That language is because some

24   of these requests are for warrants and some are for orders,

25   and so we just kind of grouped them together as surveillance

1    requests.

2              THE COURT:  SO you are using that language to

3    encompass all warrants, 2703(d), and subpoenas, right?

4              MS. GRAHAM:  The subpoenas have not been part of

5    the discussion.  The court orders and the warrants under

6    these various authorities.

7              THE COURT:  Okay.  Not the subpoenas.  Okay.

8              And then the second broad area of your

9    disagreement is denial on amended applications for warrants

10   and I assume these other things as well.

11             Mr. Rank, how does this work now?  When you go to

12   a magistrate judge and seek a warrant, if they just say no

13   and that's the end of it, there's no record on ECF that you

14   even asked for it, right?  That was our discussion awhile

15   ago.

16             MR. RANK:  That is my understanding, Your Honor.

17             THE COURT:  Okay.  So then if the magistrate judge

18   does -- again, I don't think I've ever signed a search

19   warrant application.  They don't come to us district judges.

20   So if the magistrate judge thinks you need a little more

21   here or a little more there, just what does that look like,

22   that back and forth?

23             MR. RANK:  So, generally speaking, what happens is

24   there's a read-ahead of a search warrant application that

25   goes to the duty magistrate, and that read-ahead is all the

1    search warrant documents, including the affidavit in support

2    of the search warrant.

3            A duty magistrate will review all the materials.

4    And if there is a situation in which the duty magistrate

5    says, for example, I think you need more probable cause with

6    respect to this particular thing -- let's say you've got a

7    Rule 41 warrant and you want to look in a house and a garage

8    and the magistrate judge says, for example, I see how you

9    have nexus between your probable cause and getting into the

10   house, but I don't see it for the garage and I need some

11   more information on how the garage is relevant to your

12   investigation and your probable cause, the magistrate may

13   give it back to the agent and say if you beef this up, I

14   will approve it.

15           So there may be a rewrite at that point in time,

16   additional information put into the affidavit to support

17   getting into the garage or the agent may say, you know what,

18   I don't think I have something specific to get in there,

19   I'll take that off of the request.  Those are two options.

20   And at that point in time, the application would be

21   resubmitted.  The magistrate would look at it and say, yes,

22   I'm good with this.  Thank you for the additional

23   information on the garage.  I'll sign it.  Or thank you for

24   taking the garage off, I'll sign the warrant with respect to

25   the house.  And that is the warrant that gets filed on ECF

1    and put into the court's system.

2              THE COURT:  What does this back and forth

3    communication look like?  Are you doing this in person?  Are

4    you emailing each other or talking to each other on the

5    phone?

6              MR. RANK:  So it has evolved through the pandemic,

7    Your Honor.  The old model of presentation of search

8    warrants was an agent would make an appointment with the

9    duty magistrate, would email a read-ahead to the

10   magistrate's chambers.  It would be reviewed.  And then the

11   final version of the search warrant would come with the

12   agent into the judge's chambers for review and signing of

13   the affidavit and the search warrant.

14             So the agent swears it out in front of the

15   magistrate judge.  The judge signs it, packet is put

16   together, and the search warrant is completed.

17             When the pandemic started, the court pivoted to

18   using some forms of remote presentation, and so now the

19   first part of that is still followed where the read-ahead

20   goes ahead via email.  The second part of the presentation

21   is done by Zoom, by FaceTime, whatever technology both the

22   agent and the magistrate have for executing.

23             And so it's roughly the same process, but it's

24   simply done by emailing the signed packets back and forth.

25   The agent swears out the affidavit but does it via FaceTime

1   or Zoom and then sends that packet typically via email to

2   the magistrate who reviews it, signs it, and sends it back

3   to the agent for execution.

4        THE COURT:  So there's basically no record of this

5   in our system except for the final warrant application and

6   the final warrant?  So the back and forth, none of that is

7   preserved in our ECF system?

8        MR. RANK:  That's my understanding, Your Honor.

9   That's certainly not preserved in the ECF system, that's

10   correct.

11        THE COURT:  So, Ms. Graham, what is it that your

12   folks are looking to have us change regarding this practice?

13        MS. GRAHAM:  So RCFP believes that when the

14   materials are presented to the judge, that is when they

15   should be docketed.  So that is whether they are denied.

16   Regardless of whether there's a written opinion about the

17   denial, they should be docketed.  There should be a paper

18   trail that that request was sought or that application was

19   filed.

20        We also believe that the applications when they're

21   presented to the judge, even if they're amended, should all

22   be captured on the docket.

23        So I guess the change, just as an example would

24   be, you know, as Mr. Rank described, that first application

25   would probably be docket entry 1.  Right?  There would be

1    some notation that there was an amended application filed,

2    which would either cut out the garage or add a showing

3    regarding the garage.  And then that would be the amended

4    application.  And then the order granting it, for example,

5    would follow on.  So the rest of the docket would look the

6    same.

7              THE COURT:  So you're not asking that magistrates

8    and the government be forced to put all this in writing and

9    docket all of it?  They can still communicate back and forth

10   with each other verbally?  If there is an amended

11   application, you want to see both the original and the

12   amended?

13             MS. GRAHAM:  Correct, Your Honor.  Yes.  It is not

14   the conversations of the swearing in all be written down or

15   orders be written, but it is keeping track of the evolution

16   of that application, that that be captured somewhere and

17   reflected on a docket.

18             THE COURT:  And also to, I guess, create cases for

19   rejected applications?

20             MS. GRAHAM:  Correct.

21             THE COURT:  Okay.  And the government objects to

22   all this, Mr. Rank?

23             MR. RANK:  It does, Your Honor.

24             THE COURT:  Okay.  As I said, I don't want to have

25   a fight open up here.  I'm just trying to figure out what

1    we're about.

2          Okay.  And I take it from your letter that all

3    this would be subject to the same kind of unsealing, six

4    months, you know, longer if necessary, that kind of thing?

5          MS. GRAHAM:  Yes, Your Honor.

6          THE COURT:  Okay.  Is there anything else?  I

7    think that covers the two things mentioned in the letter.

8    Is there anything else that you are disagreeing about right

9    now?

10         MS. GRAHAM:  No, Your Honor.  We did our best to

11   try to define the exact areas where there is still

12   disagreement, so those are the two.

13         THE COURT:  There are other things -- I didn't

14   have time, I'm sorry, we're super busy these days, but I

15   didn't have time to go back and read your original papers.

16         I recall there was some other stuff in there.

17   That's stuff you're just not pursuing at this time after

18   your discussions with our Clerk's Office and the Government?

19         MS. GRAHAM:  Correct, Your Honor, or they were

20   things that were already happening in the district.

21         THE COURT:  Okay.  So here's what we'll do then,

22   is I will have my Courtroom Deputy -- she is not in today,

23   but she will be in on Monday -- I'll have her contact you

24   and get you a hearing date.  Okay?  And then I think it's 45

25   days before that hearing go ahead and file a motion to -- I

1    don't know what it would be, whatever you want to label it,

2    but a motion for relief or a motion for something or other,

3    and then file an affidavit [sic] with -- not affidavit,

4    sorry, memorandum and anything else you want.  We'll treat

5    it like a dispositive motion under our rules.  So follow our

6    rule, Rule 7.1 on dispositive motions, and just brief it

7    that way.

8            And then, Mr. Rank, I know this is -- we're in

9    such an awkward position because I know you're not a party,

10   but, I mean, if the Government opposed the relief sought, I

11   need you to file a response brief and explain why.

12   Effectively we're going to treat you as though you are the

13   opponent.

14           Anything the two of you agree on I doubt very much

15   my court will independently object to, as long as it's

16   technologically feasible for us.  So let's just proceed that

17   way.  So just tee it up like a dispositive motion.

18           I have to warn you, as I know Mr. Rank can tell

19   you, we are really, really backed up because of the

20   pandemic.  We couldn't try criminal cases for however long,

21   and we have a big back-up of trials.  We also couldn't try

22   civil trials.  I've got parties who have waited four years

23   for a civil trial.  And I'm going to be in trial mostly

24   between now and, I think, the end of March at this point.

25   So it's just -- this won't be quick, but we'll be diligent

 1    if slow.  So I'm warning it will take a little while.  I

 2    don't have time.  I'm in court constantly between now and

 3    the end of -- as of now and the end of March.  But we'll do

 4    our best to resolve.

 5         In the meantime, I will talk about getting our

 6    internal mechanisms operating to try to get the stuff that

 7    you have agreed on implemented.  I'll talk to Lou Jean and

 8    I'll talk to the Chief Judge and we'll figure out how to

 9    best proceed internally.

10         It all sounds like a good idea to me.  I doubt

11    very much any of our judges will have any problems with the

12    stuff you've agreed on.  It's just a matter of getting our

13    local rule amended and getting our internal processes

14    adjusted, and we'll work on that.

15         When I next see you, I'll talk to you about

16    whatever progress we've made.  Hopefully, we'll have it done

17    by then.  Okay?

18         Anything else you need to talk to me about this

19    morning?

20              MS. GRAHAM:  No, Your Honor.  Thank you.

21              THE COURT:  Okay.  Anything else on your side,

22    Mr. Rank?

23              MR. RANK:  Nothing from the government, Your

24    Honor.

25              THE COURT:  I may pull you in.  I don't know what

1    this internal process for implementing the agreed-upon

2    changes is going to look like, but I may ask each of you to

3    have a representative on a committee or something to help us

4    work that through.  But let me talk to the Chief Judge first

5    and we'll see where we go.

6              MR. RANK:  Thank you, Judge.

7              MS. GRAHAM:  Thank you.

8              THE COURT:  Thank you, everyone.  Have a good

9    weekend.

10             MS. GRAHAM:  You, too.  Bye.

11             (Court adjourned at 11:43 a.m.)

12                          *     *     *

13             I, Debra Beauvais, certify that the foregoing is a

14   correct transcript from the record of proceedings in the

15   above-entitled matter.

16             Certified by:   *s/Debra Beauvais*
                               Debra Beauvais, RPR-CRR

17

18

19

20

21

22

23

24

25