# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In the Matter of the Application of the Reporters Committee for Freedom of the Press to Unseal Certain Search Warrant Materials | No. 20-mc-00082 (PJS/TNL)<br><br>**MEMORANDUM IN SUPPORT OF AMENDED APPLICATION** |

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................ i

TABLE OF AUTHORITIES ................................................................................... iii

INTRODUCTION ................................................................................................... 1

BACKGROUND ..................................................................................................... 2

   I.   The Pen Register Act and the Stored Communications Act ................................ 2

       A.   Pen Register/Trap and Trace Devices ............................................. 2

       B.   Section 2703(d) Orders ................................................................ 4

   II.   Current Unsealing Practices in the District of Minnesota ................................ 7

       A.   Rule 41, § 3117 Tracking Device, and SCA Search Warrant Materials ....... 7

       B.   Pen/Trap and 2703(d) Order Materials ...................................... 10

       C.   Amended and Denied Applications ............................................. 10

   III.   Relevant Procedural Background ...................................................... 11

ARGUMENT ....................................................................................................... 13

   I.   The public has a qualified First Amendment right of access to pen/trap and 2703(d) materials. ....................................................................... 13

       A.   Experience supports a First Amendment right of access to pen/trap and 2703(d) materials. .................................................. 16

           1.   Experience supports a First Amendment right of access because pen/trap and 2703(d) materials are analogous to search warrants. ..... 17

           2.   Experience supports a First Amendment right of access because pen/trap and 2703(d) materials are analogous to SCA search warrants. ....................................................................... 19

       B.   Logic also supports a First Amendment right of access to pen/trap and 2703(d) materials. .................................................. 19

C.    There is no compelling interest in blanket secrecy that would override the public's First Amendment right of access to pen/trap and 2703(d) materials. ...................................................................................................23

II.    There is a common law right of access to pen/trap and 2703(d) materials. ........24

A.    Pen/trap and 2703(d) materials are judicial records, the common law right of access attaches, and the presumption of access is strong. ......................25

B.    The strong common law presumption of access to pen/trap and 2703(d) materials is not overcome. ..........................................................................27

III.    The First Amendment and common law rights of access require this District to docket amended and denied surveillance applications, and to unseal the underlying materials following the same procedures as for granted applications. ........................................................................................................29

**CONCLUSION** .............................................................................................................**32**

# TABLE OF AUTHORITIES

## CASES

*Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*,
  960 F. Supp. 2d 1011 (D. Minn. 2013) ......................................................................... 24

*Balt. Sun Co. v. Goetz*,
  886 F.2d 60 (4th Cir. 1989) ................................................................................ 15, 18

*Carpenter v. United States*,
  138 S. Ct. 2206 (2018) ............................................................................................ 5

*Detroit Free Press v. Ashcroft*,
  303 F.3d 681 (6th Cir. 2002) ............................................................................. 15, 16

*Doe v. Pub. Citizen*,
  749 F.3d 246 (4th Cir. 2014) ................................................................................. 31

*FTC v. Std. Fin. Mgmt. Corp.*,
  830 F.2d 404 (1st Cir. 1987) ................................................................................. 20

*Globe Newspaper Co. v. Pokaski*,
  868 F.2d 497 (1st Cir. 1989) ................................................................................. 31

*Globe Newspaper Co. v. Super. Ct.*,
  457 U.S. 596 (1982) .............................................................................................. 20

*Globe Newspaper v. Fenton*,
  380 F.3d 83 (D. Mass. 1993) ................................................................................. 30

*Hartford Courant Co. v. Pellegrino*,
  380 F.3d 83 (2d Cir. 2004) ............................................................................... 30, 31

*IDT Corp. v. eBay*,
  709 F.3d 1220 (8th Cir. 2013) ........................................................................ passim

*In re Appl. of Leopold to Unseal Certain Elec. Surveillance Appls. & Ords.* (*Leopold*),
  964 F.3d 1121 (D.C. Cir. 2020) ...................................................................... passim

*In re Appl. of United States for Ord. Pursuant to 18 U.S.C. § 2703 (d)* (*Appelbaum*),
  707 F.3d 283 (4th Cir. 2013) ............................................................. 16, 18, 26, 28

*In re Boston Herald, Inc.*,
  321 F.3d 174 (1st Cir. 2003) .................................................................... 15, 16, 18

*In re Copley Press, Inc.*,
   518 F.3d 1022 (9th Cir. 2008) ........................................................................14

*In re N.Y. Times Co.*,
   828 F.2d 110 (2d Cir. 1987) ...........................................................................23

*In re Neal v. Kan. City Star*,
   461 F.3d 1048 (8th Cir. 2006) ...................................................................25, 27

*In re Oliver*,
   333 U.S. 257 (1948) ........................................................................................13

*In re Reps. Comm. for Freedom of the Press*,
   773 F.2d 1325 (D.C. Cir. 1985) .......................................................................16

*In re Sealing & Non-Disclosure of Pen/Trap/2703(d) Ords.*,
   562 F. Supp. 2d 876, 892 (S.D. Tex. 2008) ................................................18, 21

*In re Search of Fair Fin.*,
   692 F.3d 424 (6th Cir. 2012) ...........................................................................31

*In re Search Warrant for Secretarial Area Outside Off. of Gunn* (*In re Gunn*),
   855 F.2d 569 (8th Cir. 1988) .....................................................................passim

*Jackson v. Malecek*,
   1993 WL 315429, 2 F.3d 1154 (8th Cir. 1993) ................................................31

*Marden's Ark, Inc. v. UnitedHealth Grp., Inc.*,
   No. 19-cv-1653-PJS-DTS, 2021 WL 1846803 (D. Minn. Apr. 15, 2021) .............24, 26

*McDonald v. United States*,
   335 U.S. 451 (1948) ........................................................................................17

*N.Y. Civ. Liberties Union v. N.Y.C. Transit Auth.*,
   684 F.3d 286 (2d Cir. 2012) ...........................................................................16

*Nixon v. Warner Commc'ns, Inc.*,
   435 U.S. 589 (1978) ...................................................................................24, 28

*Press-Enterprise Company v. Super. Ct.* (*Press-Enterprise II*),
   478 U.S. 1 (1986) ....................................................................14, 16, 20, 23

*Richmond Newspapers, Inc. v. Virginia*,
   448 U.S. 555 (1980) ...................................................................................13, 14

*Skky, LLC v. Facebook, Inc.*,
   191 F. Supp. 3d 977 (D. Minn. 2016)..................................................................25, 26

*Smith v. U.S. Dist. Ct.*,
   956 F.2d 647 (7th Cir. 1992) ...............................................................................20

*Truong v. UTC Aerospace Sys.*,
   439 F. Supp. 3d 1171 (D. Minn. 2020)................................................................25

*United States v. Aref*,
   533 F.3d 72 (2d Cir. 2008) ...................................................................................20

*United States v. Chagra*,
   701 F.2d 354 (5th Cir. 1983) ...............................................................................15

*United States v. Criden*,
   675 F.2d 550 (3d Cir. 1982) .................................................................................30

*United States v. El-Sayegh*,
   131 F.3d 158 (D.C. Cir. 1997)..............................................................................16

*United States v. Gonzales*,
   150 F.3d 1246 (10th Cir. 1998) ...........................................................................15

*United States v. Mendoza*,
   698 F.3d 1303 (10th Cir. 2012) ...........................................................................30

*United States v. Simone*,
   14 F.3d 833 (3d Cir. 1994) ...................................................................................15

*United States v. Suarez*,
   880 F.2d 626 (2d Cir. 1989) .................................................................................15

*United States v. Thunder*,
   438 F.3d 866 (8th Cir. 2006) ...............................................................................13

*United States v. Valenti*,
   987 F.2d 708 (11th Cir. 1993) .............................................................................31

*Zink v. Lombardi*,
   783 F.3d 1089 (8th Cir. 2015) .............................................................................14

## CONSTITUTIONAL AMENDMENTS

U.S. Const. amend. IV .......................................................................................... 17

## STATUTES

18 U.S.C. § 2703 .......................................................................................... 1, 2, 5

18 U.S.C. § 2705 .................................................................................................. 5

18 U.S.C. § 3117 .................................................................................................. 2

18 U.S.C. § 3123 .................................................................................... 1, 2, 3, 27

18 U.S.C. § 3127 .................................................................................................. 3

28 U.S.C. § 1651 ................................................................................................ 12

Electronic Communications Privacy Act of 1986, Pub. L. No. 99-508, 100 Stat. 1848
    (1986) ................................................................................................................ 2

Pen Register Act, 18 U.S.C. § 3121–27 ............................................................... 2

Stored Communications Act, 18 U.S.C. §§ 2701–13 ..................................... 4, 27

## PROCEDURAL RULES

Fed. R. Civ. P. 79 .............................................................................................. 30

Fed. R. Crim. P. 55 ........................................................................................... 30

## OTHER AUTHORITIES

Devin Barrett, *Trump Justice Department Secretly Obtained Post Reporters' Phone
    Records*, Wash. Post. (May 7, 2021),
    https://wapo.st/321ya0g [https://perma.cc/B3DD-A5TR] ............................ 22

Bruce D. Brown & Gabe Rottman, *Everything We Know About the Trump-Era Records Demands from the Press*, Lawfare (July 6, 2021), https://www.lawfareblog.com/everything-we-know-about-trump-era-records-demands-press [https://perma.cc/2T4G-PAW8] .......................................................... 6, 22

DOJ, *FOIA Library*, https://www.justice.gov/criminal/foia-library [https://perma.cc/UBC3-77J3] ............... 4

DOJ, *Report on the Use of Pen Registers and Trap and Trace Devices by the Law Enforcement Agencies/Offices of the Department of Justice for Calendar Year 2004* (2004), https://www.justice.gov/sites/default/files/criminal/legacy/2010/11/12/2004penreg-anlrpt.pdf [https://perma.cc/7M5J-RJKE] ........................................................ 4

DOJ, *Report on the Use of Pen Registers and Trap and Trace Devices by the Law Enforcement Agencies/Offices of the Department of Justice for Calendar Year 2019* (2019), https://www.justice.gov/criminal/file/1439716/download [https://perma.cc/8NV4-CTMT] ........................................................................................................ 4, 22

Google, *Global Requests for Information*, https://transparencyreport.google.com/user-data/overview?hl=en&user_requests_report_period=series:requests,accounts;authority:US;time:&lu=user_requests_report_period [https://perma.cc/KU25-MWHA] ........... 5

Ellen Nakashima, *Justice Department Moves to End Routine Gag Orders on Tech Firms*, Wash. Post. (Oct. 24, 2017), http://wapo.st/2yNETdt [http://perma.cc/NV2Y-X624] .................................................. 6

Rod J. Rosenstein, Memorandum re: Policy Regarding Applications for Protective Orders Pursuant to 18 U.S.C. § 2705(b) (Oct. 19, 2017), https://www.justice.gov/criminal-ccips/page/file/1005791/download [https://perma.cc/2PXD-BRKG] .................................................................... 6

S. Rep. No. 99-541 (1986) ................................................................. 17

Stephen Smith, *Gagged, Sealed & Delivered: Reforming ECPA's Secret Docket*, 6 Harv. L. & Pol'y Rev. 313 (2012) .......................................................... 21

T-Mobile, *Transparency Reports 2013–2020*, https://www.t-mobile.com/news/transparency-reports [https://perma.cc/G6KY-28JR] . 5

U.S. Dist. Ct., D. Minn., *Criminal Case Opening Procedure for the United States Attorney's Office: Pen Registers, Trap & Trace, and Applications Pursuant to 18:2703(d)* (rev. Jan. 2022), https://www.mnd.uscourts.gov/sites/mnd/files/Criminal-Case-Opening-Procedure_US-Attorney-Office.pdf [https://perma.cc/VP8S-77NC]....................11, 29

U.S. Dist. Ct., D. Minn., *Public Access to Court Records (PACER)*, https://www.mnd.uscourts.gov/public-access-court-records-pacer [https://perma.cc/ZP39-V27Q] ......................................................................................9

Verizon, *Transparency Report Archives*, https://www.verizon.com/about/investors/transparency-report-archives [https://perma.cc/DG2D-TLKW] ..................................................................................5

David Vigilante, *CNN Lawyer Describes Gag Order and Secretive Process Where Justice Department Sought Reporter's Email Records*, CNN (June 9, 2021), https://www.cnn.com/2021/06/09/politics/david-vigilante-cnn-email-secret-court-battle/index.html [https://perma.cc/NC9M-HRB7] ......................................................22

## INTRODUCTION

Through its Amended Application, the Reporters Committee for Freedom of the Press (the "Reporters Committee") respectfully requests that the Court enter an Order directing the Clerk of the Court ("Clerk's Office") to apply the same unsealing practices the District currently utilizes for applications, supporting materials, and warrants sought pursuant to Federal Rule of Criminal Procedure 41 ("Rule 41 materials") and the Stored Communications Act ("SCA search warrant materials") to applications, supporting materials, and any related orders sought under the Pen Register Act ("PRA"), 18 U.S.C. § 3123, and 18 U.S.C. § 2703(d). Effective January 1, 2022, the District began creating public dockets for applications, supporting materials, and any related orders granted pursuant to the Pen Register Act ("pen/trap materials") and 18 U.S.C. § 2703(d) ("2703(d) materials"), although the materials themselves are sealed. The Reporters Committee requests that the underlying materials be unsealed 180 days after filing absent a showing that continued sealing is necessary and narrowly tailored to serve a compelling interest. The district court currently unseals Rule 41 materials and SCA materials after 180 days absent a showing of continued need for sealing.

The public has First Amendment and common law rights of access to pen/trap and 2703(d) materials submitted to the Court. Access to these materials would provide the public with insight into the government's use and the court's authorization of electronic surveillance. It also would provide the press with the information it needs to keep the public informed about its government and bolster both fairness and the appearance of fairness of the court.

The Reporters Committee further respectfully requests that the Court docket government applications, supporting materials, and any related orders for applications that are amended or denied. Presently, most types of surveillance applications are only docketed when applications are granted or when a judge specifically orders them to be docketed. This would require a change of practice for warrants issued pursuant to Rule 41 ("Rule 41 search warrants"); warrants issued pursuant to the SCA ("SCA search warrants"), 18 U.S.C. § 2703; mobile tracking device warrants or orders as described in 18 U.S.C. § 3117 ("§ 3117 tracking device warrants and orders"); orders for pen register and trap and trace devices ("pen/trap orders"), 18 U.S.C. § 3123; and orders issued pursuant to 18 U.S.C. § 2703(d) ("2703(d) orders").

The First Amendment and common law rights of access require the docketing of all amended and denied applications for Rule 41 search warrants, SCA search warrants, § 3117 tracking device warrants and orders, pen/trap orders, and 2703(d) orders. The public has at least as strong—if not a stronger—interest in disclosure where a government surveillance application was found wanting as when the application was granted.

## BACKGROUND

### I.   The Pen Register Act and the Stored Communications Act

#### A.   Pen Register/Trap and Trace Devices

Pen registers and trap and trace devices ("pen/trap devices") are law enforcement surveillance tools. Their use is governed by the PRA, 18 U.S.C. §§ 3121–27, which is found in Title III of the Electronic Communications Privacy Act of 1986 ("ECPA"), Pub. L. No. 99-508, 100 Stat. 1848 (1986). Pen/trap devices record metadata—such as

telephone numbers, email addresses, and other routing information—transmitted by wire or electronic communications carriers. 18 U.S.C. § 3127(3)–(4).

The installation of a pen/trap device does not require probable cause. Instead, a court "shall enter" an order authorizing the installation and use of a pen/trap device if it "finds that the attorney for the Government has certified to the court that the information likely to be obtained by such installation and use is relevant to an ongoing criminal investigation." *Id.* § 3123(a)(1).

A court "order authorizing or approving the installation and use" of a pen/trap device "shall direct" that "the order be sealed until otherwise ordered by the court." *Id.* § 3123(d). While the PRA contemplates unsealing pen/trap materials when "ordered by the court," *id.*, such unsealing is, in practice, uncommon.

Law enforcement use of pen/trap devices is widespread around the nation and has increased over the years. A Department of Justice ("DOJ") report on the use of pen/trap devices by four federal law enforcement agencies shows that in 2019, the most recent year for which data is publicly available, 23,646 people were affected by those agencies' use of pen registers on telephone facilities, 23,528 people were affected by those agencies' use of trap and trace devices on telephone facilities, and 19,935 pen/trap devices were authorized for use on email and/or internet networks. DOJ, *Report on the Use of Pen Registers and Trap and Trace Devices by the Law Enforcement Agencies/Offices of the Department of*

*Justice for Calendar Year 2019* (2019)[1] [hereinafter 2019 Pen/Trap Rep.]; *see also* DOJ, *FOIA Library* (containing annual reports on pen/trap device orders requested by four federal law enforcement agencies and offices within DOJ (choose "Frequently Requested Records," then go to "Policy & Statutory Enforcement Unit (PSEU)")). In contrast, DOJ reported that 9376 people were affected by those agencies' use of pen registers on telephone facilities, 5432 people were affected by those agencies' use of trap and trace devices on telephone facilities, and 20 pen/trap devices were authorized for use on email and/or internet networks in 2004. DOJ, *Report on the Use of Pen Registers and Trap and Trace Devices by the Law Enforcement Agencies/Offices of the Department of Justice for Calendar Year 2004* (2004).

The total volume of authorized pen/trap device usage is likely higher, as these numbers reflect only pen/trap devices judicially authorized for use by the four agencies included in the report. The report does not include, for example, pen/trap devices authorized for use by components of the Department of Homeland Security, Securities and Exchange Commission, Department of the Treasury, or other federal agencies engaged in civil or criminal investigations.

### B.   Section 2703(d) Orders

The SCA, 18 U.S.C. §§ 2701–13, among other things, provides government entities with mechanisms to compel third-party electronic communication service or remote computing service providers to disclose the contents of stored wire and electronic

---

[1] For authorities available on the internet, URLs appear in the Table of Authorities. All sites were last visited on or after January 24, 2022.

communications, as well as records and other information pertaining to subscribers. These mechanisms include 2703(d) orders, subpoenas, and warrants. *See id*. § 2703(a), (b)(1)(A)–(B), (c)(1)(A), (c)(2), (d).

Like pen/trap orders, 2703(d) orders may be issued without probable cause. When seeking a 2703(d) order, the government must present the court with "specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." *Id.* § 2703(d).

The government's use of 2703(d) orders is largely opaque. DOJ does not issue reports on its use of 2703(d) orders, and companies that receive these orders and issue transparency reports do not generally break these orders out into a separate category.[2] The SCA does not generally require the government to give notice to people affected by 2703(d) orders, *see id.* § 2703(c)(3), (d), and gives the government tools to prevent companies from providing notice to their customers "for such period as the court deems appropriate," *see id.* § 2705(b).[3]

---

[2] For example, Verizon and T-Mobile reported receiving a combined total of 59,946 court orders in 2020, but these carriers do not distinguish 2703(d) orders from other sorts of orders and the reports suggest that 2703(d) orders may be a small portion of the total after *Carpenter v. United States*, 138 S. Ct. 2206 (2018). *See* Verizon, *Transparency Report Archives*; T-Mobile, *Transparency Reports 2013–2020*. Similarly, Google's transparency reports do not break 2703(d) orders out into their own category, instead lumping them into an "Other Court Orders" classification. *See, e.g.*, Google, *Global Requests for Information*, (detailing total U.S. requests under various authorities from July 2009 to Dec. 2020).

[3] In 2017, DOJ implemented internal guidelines to address the problem of prosecutors requesting indefinite gag orders under 18 U.S.C. § 2705(b) as a matter of course. *See* Rod

The public has an interest in understanding how the government uses pen/trap and 2703(d) surveillance authorities and whether and how courts are performing their oversight function. For instance, the government has sought and obtained judicial authorization under various provisions of the SCA to seize journalists' electronic communications records in order to identify journalists' confidential sources. In 2020, for example, DOJ seized non-content email records of eight reporters working at The New York Times, CNN, and The Washington Post. Bruce D. Brown & Gabe Rottman, *Everything We Know About the Trump-Era Records Demands from the Press*, Lawfare (July 6, 2021). DOJ initially used a gag order to prevent Google, the email provider for the Times, from notifying the outlet about the surveillance. *Id.* In another instance, because CNN's parent company hosted the outlet's email, the government was not able to prevent CNN from learning of the surveillance. *Id.* But it did obtain a gag order prohibiting CNN's general counsel from notifying the reporter whose email was targeted. *Id.* The affected reporters at the Times and CNN only learned that they had been subjected to the surveillance when DOJ notified them many months after the fact. *Id.*

---

J. Rosenstein, Memorandum re: Policy Regarding Applications for Protective Orders Pursuant to 18 U.S.C. § 2705(b) (Oct. 19, 2017); *see also* Ellen Nakashima, *Justice Department Moves to End Routine Gag Orders on Tech Firms*, Wash. Post. (Oct. 24, 2017). These guidelines reflect the government's own recognition of a need for transparency regarding its demands for individuals' electronic data from third-party service providers.

## II.   Current Unsealing Practices in the District of Minnesota

### A.   Rule 41, § 3117 Tracking Device, and SCA Search Warrant Materials

In the District of Minnesota, certain types of warrants and surveillance orders—Rule 41 search warrants, SCA search warrants, and § 3117 tracking device warrants and orders—are generally placed on the docket only when they are granted. *See* Tr. of Video Status Conf. 6:16–7:18, Oct. 22, 2021, ECF No. 33 [hereinafter Oct. 22 Tr.] (Rule 41 search warrants); *id.* at 7:19–7:22 (SCA search warrants); *id.* at 20:17–21:3 (§ 3117 tracking device warrants and orders). The public can search for these dockets in the CM/ECF system in several ways. For records docketed prior to January 1, 2022, the public can access the dockets by running a query with the term "search warrant" in the "Last/Business Name" field. For records filed on or after January 1, 2022, the public can also generate a report using the new "case flags" for Rule 41 search warrants, SCA search warrants, and § 3117 tracking device warrants.

In many—though not all—circumstances, the government will seek a sealing order applicable to the docket, application, and related documents. *See id.* at 18:9–16 (discussing process for seeking sealing orders and default practices). As a matter of practice, when seeking sealing, the government asks that the list of docket entries and corresponding materials ("underlying materials")—which include, for example, the sealing request, sealing order, application, and any subsequent materials—be sealed for six months. *Id.* at 18:13–19:5. When a sealing order like this is in place, neither the docket entries nor the underlying materials are viewable to the public.

7



*Figure 1: The public's view of a Rule 41 search warrant, SCA search warrant, or § 3117 tracking device warrant or order docket while a sealing order is in force.*

After six months, the Clerk's Office unseals the docket entries and underlying materials unless the government obtains an order extending the sealing. *See id.* at 18:16–18 (indicating that orders must be sought to extend sealing beyond time set in sealing order). Such extensions require an individualized showing that there is reason for the materials to remain under seal and are typically six to twelve months longer, depending on the circumstances of the case. *id.* at 18:16–18, 19:2–5. Once a sealing order expires, the list of docket entries is viewable by the public on CM/ECF.

The Clerk's Office has followed these unsealing practices for about ten years. *Id.* at 19:6–23.



*Figure 2: When the sealing order for this docket expired on Oct. 1, 2021, the list of docket entries became visible on CM/ECF.*

While the list of docket entries is viewable in the CM/ECF system, the materials themselves cannot be opened or downloaded via CM/ECF. Instead, they are accessible only at a terminal in the Clerk's Office, which is open to the public.[4] When the public clicks on docket entries for unsealed search warrant dockets, CM/ECF displays the "hard coded" message that "You do not have permission to view this document. As of January 2022, the Court's website has a statement clarifying that these materials are available for viewing at a terminal in the Clerks' Office. U.S. Dist. Ct., D. Minn., *Public Access to Court Records (PACER)*.

---

[4] During the height of the Covid-19 pandemic when the courthouse was closed, the public could only access the terminal by appointment.



*Figure 3: When the public clicks on docket entries for unsealed search warrant dockets in CM/ECF, they see this message.*

### B.    Pen/Trap and 2703(d) Order Materials

The unsealing practices described above do not apply to pen/trap and 2703(d) orders. As of January 1, 2022, pen/trap and 2703(d) orders are publicly docketed when they are filed. However, pen/trap and 2703(d) orders and the related materials are not unsealed absent a court order. The presumption regarding sealing is flipped—in the process described above, unsealing is the default and sealing is requested and time-limited, but for pen/trap and 2703(d) orders, sealing is the default and a showing must be made to unseal materials. As a result, the docket entries and underlying materials for pen/trap and 2703(d) orders are effectively perpetually inaccessible to the public absent special circumstances (such as a request to unseal a particular item).[5]

### C.    Amended and Denied Applications

When a magistrate judge denies an application for a Rule 41 search warrant, SCA search warrant, or § 3117 tracking device warrant or order, no docket is created as a standard practice. Oct. 22 Tr. at 7:2–9, 23:11–16. If the magistrate judge decides that an

---

[5] Another example of when the public can access pen/trap and 2703(d) order information is when those orders are requested and issued in conjunction with a search warrant. *See, e.g.*, Search Warrant, *In re Authorization to Obtain Historical Records Containing Cell Site Information, Pen Register/Trap & Trace Devices with Cell Site Info., and GPS Ping Data Concerning the Target Mobile Phone Describe in Attach. A*, No. 20-mj-380-HB (June 11, 2020), ECF No. 3.

application requires amendment before being granted, it returns the application to the government without creating a docket entry or other record reflecting the decision not to sign the application that was originally submitted to the court. *Id*. at 23:20–25:1. A docket is only created when an application is signed and the docket entries only reflect the granted submission, sealing requests and orders related to that submission, and subsequent proceedings. *See id*. at 24:21–25:1, 26:4–10.

How amended or denied pen/trap orders and 2703(d) applications and orders are docketed is less clear because those dockets were previously entirely sealed, but as of January 2022 these applications are initially filed on CM/ECF. *See* U.S. Dist. Ct., D. Minn., *Criminal Case Opening Procedure for the United States Attorney's Office: Pen Registers, Trap & Trace, and Applications Pursuant to 18:2703(d)* (rev. Jan. 2022).

## III.  Relevant Procedural Background

On December 8, 2020, the Reporters Committee filed an application requesting the Court unseal (1) SCA search warrant materials pertaining to now-inactive investigations from January 1, 2018 to the date of the Court's order; and (2) all docket sheets reflecting SCA search warrant applications filed from January 1, 2018 to the date of the Court's order, whether or not those investigations are still active. Appl. of Reporters Committee for Freedom of the Press to Unseal Certain Search Warrant Materials 1, ECF No. 1. The Reporters Committee further requested an order requiring that, prospectively, all docket sheets reflecting SCA search warrant materials be publicly available from the time of filing, that all SCA search warrant materials be unsealed by motion of the U.S. Attorney's Office for the District of Minnesota ("USAO") once the investigation to which they pertain

becomes inactive, and that any materials still under seal 180 days after filing be unsealed by the Court absent a showing by the USAO that continued sealing of those materials is necessary to serve a compelling interest and is narrowly tailored to that interest. *Id.* at 1–2.

On February 24, 2021, this Court denied the Reporters Committee's application without prejudice, Order, ECF No. 23, so that the Reporters Committee and the USAO could confer between themselves and with the Clerk's Office about the District's current practices for docketing and unsealing such materials. Tr. of Video Status Conf. 6:22–8:12, Feb. 24, 2021, ECF No. 26. After conferring on numerous occasions, and with the assistance of the Clerk's Office and the Court, the USAO and the Reporters Committee reached the understanding about current docketing and unsealing practices in the District that is detailed above. The parties also agreed on certain changes to procedures but could not reach agreement as to others. *See* Joint Letter to Court (Oct. 15, 2021), ECF No. 30. On October 22, 2021, the Court held a status conference where the parties presented their points of agreement and disagreement.

The Reporters Committee requested—and the Court directed—that the Clerk's Office add surveillance warrant and court order flags to the CM/ECF system to delineate between the different types of surveillance warrants and orders the government seeks. The flags cover Rule 41 search warrants, SCA search warrants, § 3117 tracking device warrants and orders, pen/trap orders, 2703(d) orders, and orders sought under the All Writs Act, 28 U.S.C. § 1651. Where multiple sources of authority are used to justify an application, all corresponding flags are included. The Reporters Committee also requested that a notice be posted to the Court website informing the public that unsealed warrants and surveillance

orders are accessible in person at the Clerk's Office. The Court implemented these changes on January 1, 2022.

The parties have been unable to reach agreement on two issues, which the Reporters Committee now brings to the Court. ***First***, the Reporters Committee requests that the District implement the same unsealing practices it currently uses for Rule 41, SCA, and § 3117 tracking device warrants and orders, for pen/trap and 2703(d) orders. Specifically, the Reporters Committee requests that pen/trap and 2703(d) materials be unsealed after six months absent an individualized showing of the need for continued sealing. ***Second***, the Reporters Committee requests that amended and denied applications for warrants and other surveillance orders be docketed and subjected to the same unsealing procedures that apply to granted applications of a similar type. This argument pertains to applications for Rule 41 search warrants, SCA search warrants, § 3117 tracking device warrants and orders, pen/trap orders, and 2703(d) orders.

## ARGUMENT

### I.    The public has a qualified First Amendment right of access to pen/trap and 2703(d) materials.

The public's right of access to judicial proceedings has long been considered a vital "safeguard against any attempt to employ our courts as instruments of persecution." *United States v. Thunder*, 438 F.3d 866, 867 (8th Cir. 2006) (quoting *In re Oliver*, 333 U.S. 257, 270 (1948)). "People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 572 (1980). The First Amendment plays a

"structural role [in] securing and fostering our republican system of self-government" by allowing the public to observe the functioning of the judiciary. *Id.* at 587–88 (Brennan, J., concurring) (emphasis removed).

In determining whether the First Amendment right of access extends to a particular proceeding or document, courts in the Eighth Circuit look to the two complementary and related considerations—experience and logic—identified by the Supreme Court in *Press-Enterprise Company v. Superior Court of California for Riverside County* (*Press-Enterprise II*), 478 U.S. 1, 8–9 (1986). *See, e.g.*, *In re Search Warrant for Secretarial Area Outside Off. of Gunn* (*In re Gunn*), 855 F.2d 569, 573 (8th Cir. 1988). "Experience" takes into account the extent to which "the place and process have historically been open to the press and general public." *Id.* (quoting *Press-Enterprise II*, 478 U.S. at 8). "Logic" refers to "whether public access plays a significant positive role in the functioning of the particular process in question." *Id.* (quoting *Press-Enterprise II*, 478 U.S. at 8).

The Eighth Circuit has not opined on the relative importance of experience and logic. *See, e.g.*, *id.* (finding both experience and logic supported constitutional right of access to search warrant materials); *Zink v. Lombardi*, 783 F.3d 1089, 1113 (8th Cir. 2015) (finding neither experience nor logic supported constitutional right of prisoners to know the source of the drug to be used in their executions). However, as the Supreme Court indicated in *Press-Enterprise II* and as other jurisdictions have recognized, logic alone can support a First Amendment right of access. *See* 478 U.S. at 10 n.3 (noting that some courts have recognized a First Amendment right to pretrial proceedings with "no historical counterpart"); *see also In re Copley Press, Inc.*, 518 F.3d 1022, 1026 (9th Cir. 2008)

("[L]ogic alone, even without experience, may be enough to establish the right."); *United States v. Gonzales*, 150 F.3d 1246, 1258 (10th Cir. 1998) (weighing the experience prong less heavily because the procedure at issue was "relatively new"); *United States v. Chagra*, 701 F.2d 354, 363 (5th Cir. 1983) ("Because the first amendment must be interpreted in the context of current values and conditions, the lack of an historic tradition of open bail reduction hearings does not bar our recognizing a right of access to such hearings." (citations omitted)); *In re Boston Herald, Inc.*, 321 F.3d 174, 184 n.5 (1st Cir. 2003) (noting "the absence of [an] analogous tradition might not doom a claim where the functional argument for access" is strong); *United States v. Suarez*, 880 F.2d 626, 631 (2d Cir. 1989) (finding a First Amendment right of access notwithstanding the lack of any "tradition of accessibility"); *United States v. Simone*, 14 F.3d 833, 838 (3d Cir. 1994) ("[I]n making our determination we will rely primarily on the 'logic' prong of the test."); *Detroit Free Press v. Ashcroft*, 303 F.3d 681, 701 (6th Cir. 2002) ("[A] brief historical tradition might be sufficient to establish a First Amendment right of access where the beneficial effects of access to that process are overwhelming and uncontradicted."); *but see Balt. Sun Co. v. Goetz*, 886 F.2d 60, 64 (4th Cir. 1989) (finding no First Amendment right of access because the experience prong was not satisfied).

Where the First Amendment right of access applies, it can be overcome only if closure is "necessitated by a compelling government interest" and "is narrowly tailored to that interest." *In re Gunn*, 855 F.2d at 574 (citations omitted). A district court must explain its decision to restrict access to a proceeding or record "specific[ally] enough to enable the appellate court to determine whether its decision was proper." *Id.*

15

### A.   Experience supports a First Amendment right of access to pen/trap and 2703(d) materials.

Experience supports a First Amendment right of access where the process at issue has "historically been open to the press and general public." *Press-Enterprise II*, 478 U.S. at 8. This inquiry is a "functional" one that looks to "whether information of the sort at issue here—regardless of its prior or current classification as court records—was traditionally open to public scrutiny." *In re Reps. Comm. for Freedom of the Press*, 773 F.2d 1325, 1337 (D.C. Cir. 1985) (emphasis removed). Where newer types of documents or procedures are concerned, courts look to "analogous proceedings and documents of the same 'type or kind'" to determine whether a tradition of access exists. *In re Boston Herald*, 321 F.3d at 184 (citation omitted); *see also United States v. El-Sayegh*, 131 F.3d 158, 161 (D.C. Cir. 1997) (stating that there "can hardly be a historical tradition of access to the documents accompanying" a relatively new procedure); *Detroit Free Press*, 303 F.3d at 702 ("[W]e should look to proceedings that are similar in form and substance."); *N.Y. Civ. Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 299 (2d Cir. 2012) ("[We] ask how the new institutions fit into existing legal structures"); *but see In re Appl. of United States for Ord. Pursuant to 18 U.S.C. § 2703 (d)* (*Appelbaum*), 707 F.3d 283, 286–87 (4th Cir. 2013) (concluding that the experience prong cannot be satisfied because the SCA was not passed until 1986).

1.    **Experience supports a First Amendment right of access because pen/trap and 2703(d) materials are analogous to search warrants.**

Pen/trap and 2703(d) orders are functionally equivalent to search warrants, which have traditionally been accessible to the public. *See In re Gunn*, 855 F.2d at 573 (observing that search warrants have a history of being "open to inspection by the public"). Indeed, pen/trap and 2703(d) orders are designed to authorize searches in a way that adapts to twenty-first century technologies. *See generally* S. Rep. No. 99-541, at 1 (1986) (explaining that ECPA, which includes the provisions for pen/trap and 2703(d) orders, was passed to "update and clarify Federal privacy protections and standards in light of dramatic changes in new computer and telecommunications technologies"). Pen/trap and 2703(d) orders thus share key similarities with search warrants:

*First*, pen/trap orders, 2703(d) orders, and search warrants all establish regimes to govern law enforcement investigations into individuals' private papers.[6] *See id.* at 5 (describing ECPA as "represent[ing] a fair balance between the privacy expectations of American citizens and the legitimate needs of law enforcement agencies" in light of technological developments); *McDonald v. United States*, 335 U.S. 451, 455 (1948) (stating that search warrants exist to balance "the need to invade [] privacy in order to enforce the law"). *Second*, pen/trap and 2703(d) orders, like search warrants, authorize the government to demand access to information that would otherwise be private. *Third*, pen/trap and 2703(d) orders, like search warrants, generally provide no judicial process for

---

[6] While search warrants sweep more broadly, the security of one's "papers" is explicitly called out in the Fourth Amendment. U.S. Const. amend. IV.

a subscriber to challenge the order pre-execution. Because pen/trap and 2703(d) orders are "analogous" to search warrants, experience teaches that they are subject to the First Amendment right of access. *See In re Boston Herald, Inc.*, 321 F.3d at 184; *see also In re Sealing & Non-Disclosure of Pen/Trap/2703(d) Ords.*, 562 F. Supp. 2d 876, 892 (S.D. Tex. 2008) (finding that the "most analogous cases" to whether pen/trap and 2703(d) orders satisfy the experience prong are "those dealing with sealed search warrants").

To be sure, one federal appellate court has stated that experience does not support a First Amendment right of access to 2703(d) orders. *Appelbaum*, 707 F.3d at 286–87. But that decision is distinguishable. Unlike the Fourth Circuit, the Eighth Circuit has never held that a long, unbroken history of access is a prerequisite to finding a First Amendment right of access. Moreover, the petitioners in *Appelbaum* "concede[d] that there is no long tradition of access specifically for 2703(d) orders, given that the SCA was enacted in 1986." *Id.* at 291. As a result, the Fourth Circuit did not grapple with the "experience" prong, which, for the reasons described above, should be evaluated according to the history of access to search warrant materials. Further, unlike this case, which involves a request for unsealing after six months absent a showing of continued need for sealing, the Fourth Circuit considered only application of the First Amendment right of access to 2703(d) materials at the "pre-grand jury phase of an ongoing criminal investigation.[7] *Id.*

---

[7] Moreover, unlike the Fourth Circuit, the Eighth Circuit has held that the First Amendment right of access applies to post-execution search warrant materials in ongoing investigations. *Compare In re Gunn*, 855 F.2d at 573, *with Balt. Sun Co.*, 886 F.2d at 62 (holding that no First Amendment right of access attaches to affidavits supporting search warrants "in the

Accordingly, the Fourth Circuit's rejection of a First Amendment right of access to 2703(d) materials provides little guidance.

> **2. Experience supports a First Amendment right of access because pen/trap and 2703(d) materials are analogous to SCA search warrants.**

Additionally, pen/trap and 2703(d) materials are functionally analogous to SCA search warrants, which have a history of openness in this District. SCA search warrant applications have been publicly docketed from filing, and presumptively unsealed after six months, for about ten years. Oct. 22 Tr. 19:6–23. Pen/trap and 2703(d) orders and the underlying materials are analogous to SCA search warrants for the same reasons they are analogous to Rule 41 search warrants, with the additional similarity of being governed by the same 1986 Act. Experience supports a right of access to pen/trap and 2703(d) orders because they are functionally analogous to SCA search warrants, which have a history of access in this District.

> **B. Logic also supports a First Amendment right of access to pen/trap and 2703(d) materials.**

In addition, logic strongly supports a First Amendment right of access to pen/trap and 2703(d) materials, for two reasons: access is important to the public's understanding of the criminal justice system, and it enables public scrutiny of how the executive exercises its authority.

---

interval between execution of the warrants and indictment," but that the common law presumption applies).

In *Gunn,* the Eighth Circuit held that logic supported a constitutional right of access to warrant materials because public access was "important to the public's understanding of the function and operation of the judicial process and the criminal justice system and may operate as a curb on prosecutorial or judicial misconduct." *In re Gunn*, 855 F.2d at 573. The court's emphasis on the importance of fostering the public's understanding of the criminal justice system is derived from bedrock Supreme Court precedent addressing the First Amendment right of access. *See Press-Enterprise II*, 478 U.S. at 8; *Globe Newspaper Co. v. Super. Ct.*, 457 U.S. 596, 606 (1982) (finding that "the right of access to criminal trials plays a particularly significant role in the functioning of the judicial process and the government as a whole" and that "[p]ublic scrutiny of a criminal trial enhances the quality and safeguards the integrity of the factfinding process"). The Eighth Circuit's focus, furthermore, on the value of public oversight of the prosecutorial and judicial functions accords with the conclusions of other courts. *See, e.g.*, *Smith v. U.S. Dist. Ct.*, 956 F.2d 647, 650 (7th Cir. 1992) ("[T]he public's right to know what the executive branch is about coalesces with the concomitant right of the citizenry to appraise the judicial branch" (quoting *FTC v. Std. Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987))); *United States v. Aref*, 533 F.3d 72, 83 (2d Cir. 2008) ("[C]ourts must impede scrutiny of the exercise of [judicial] judgment only in the rarest of circumstances," especially "when a judicial decision accedes to the requests of a coordinate branch").

In the same way, access to pen/trap and 2703(d) materials will facilitate public understanding of the scope and extent of electronic surveillance and its role in the criminal justice system. Like the search warrants at issue in *Gunn*, pen/trap and 2703(d) materials

20

are "an integral part of a criminal prosecution." *In re Gunn*, 855 F.2d at 573. Pen/trap and 2703(d) materials also provide law enforcement with phone, email, and other communications records that may result in evidence being brought at trial. *See id.* But where, as here, local practice does not mandate presumptive unsealing of pen/trap and 2703(d) materials after a specific amount of time has elapsed, the records almost invariably remain hidden from the public, regardless of whether continued secrecy serves any government purpose or whether investigation has concluded entirely. *See In re Sealing & Non-Disclosure of Pen/Trap/2703(d) Ords.*, 562 F. Supp. 2d at 878 ("[W]hen it comes to shielding electronic surveillance orders from the public, indefinitely sealed means permanently sealed."). By functionally sealing pen/trap and 2703(d) materials forever, courts prevent the public from understanding how pen/trap and 2703(d) materials are written and executed, how frequently courts issue them, what types of criminal investigations utilize these orders, and why communication records seized by law enforcement with these orders are relevant to investigations.

Moreover, public access to pen/trap and 2703(d) materials is essential for executive accountability. Pen/trap and 2703(d) orders are powerful investigative tools; the public has a strong interest in knowing how law enforcement and prosecutors wield these tools. Yet the public cannot scrutinize executive branch surveillance if it cannot see the documents that seek and judicially authorize such surveillance. *See* Stephen Smith, *Gagged, Sealed & Delivered: Reforming ECPA's Secret Docket*, 6 Harv. L. & Pol'y Rev. 313, 315 (2012) (explaining that, due to the lack of public transparency around electronic surveillance, "law

enforcement is given free rein to push its surveillance power to whatever limits it chooses to recognize").

DOJ does not publish how many 2703(d) orders it obtains per calendar year. And while DOJ releases statistics on how many pen/trap orders four of its components obtain per year, these disclosures reveal nothing about the types of investigations for which the government sought the orders, or the practices of the many other federal agencies engaged in civil or criminal investigations. *See, e.g.*, 2019 Pen/Trap Rep., *supra*.

DOJ's use of gag orders compounds the problem. For example, under former President Trump, DOJ seized journalists' phone and email records via 2703(d) orders and subpoenas to uncover their confidential sources in connection with leak investigations. DOJ imposed gag orders against legal counsel and executives at CNN and The New York Times to prevent them from notifying the affected journalists about the seizure of their phone and email records. *See* Brown & Rottman, *supra*; *see also* David Vigilante, *CNN Lawyer Describes Gag Order and Secretive Process Where Justice Department Sought Reporter's Email Records*, CNN (June 9, 2021) (describing gag order against CNN General Counsel that lasted from July 2020 to May 2021). Although DOJ obtained the orders for the journalists' records in 2020, gag orders kept the public from learning about DOJ's surveillance practice until May 2021, when DOJ gave notice that it had seized records from Washington Post journalists. Devin Barrett, *Trump Justice Department Secretly Obtained Post Reporters' Phone Records*, Wash. Post. (May 7, 2021). The public only learned about the additional surveillance of CNN and Times journalists when the gag orders were lifted in May and June 2021, respectively. Brown & Rottman, *supra*. If the courts that issued

orders permitting the government to seize journalists' communication records had presumptively unsealed them after six months, gag orders might not have delayed public awareness of DOJ's surveillance practice for so long.

In sum, access to pen/trap and 2703(d) materials "operate[s] as a curb on prosecutorial or judicial misconduct" because the materials provide information to the public regarding the scope and reasons for engaging in electronic surveillance, thereby enabling the public to scrutinize potential abuses of executive surveillance authority. *See In re Gunn*, 855 F.2d at 573. The importance of the public's understanding of how pen/trap and 2703(d) materials operate within the criminal justice system, as well as the public's ability to serve as a check on abuses of executive surveillance authority, support a constitutional right of access to these materials.

> **C.    There is no compelling interest in blanket secrecy that would override the public's First Amendment right of access to pen/trap and 2703(d) materials.**

Because the First Amendment right of access attaches to pen/trap and 2703(d) materials, sealing is permissible only when there is "an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise II*, 478 U.S. at 9; *see also In re Gunn*, 855 F.2d at 574 ("Proceedings may be closed and, by analogy, documents may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored." (quoting *In re N.Y. Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987)) (quotation marks omitted)). To be sure, legitimate law enforcement interests may justify sealing some documents or portions thereof that would reveal sensitive information about

ongoing investigations. But the District's existing practices regarding SCA search warrants are responsive to these considerations. As described above, SCA search warrant materials are sealed at the time of filing; after six months, the Clerk's Office unseals the materials unless the government demonstrates a need for continued sealing. By including a mechanism for requesting continued sealing, the Court's practice both ensures that unsealing will not compromise an ongoing investigation and addresses privacy concerns. The same practice of presumptive unsealing after six months should apply to pen/trap and 2703(d) materials; no interest justifies the policy of perpetual sealing now in place.

## II.   There is a common law right of access to pen/trap and 2703(d) materials.

In addition, there is a common law right of access to pen/trap and 2703(d) materials. Judicial records and documents enjoy a well-established common law right of access. *IDT Corp. v. eBay*, 709 F.3d 1220, 1222 (8th Cir. 2013) (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)). Judicial records include court opinions and orders, *In re Appl. of Leopold to Unseal Certain Elec. Surveillance Appls. & Ords.* (*Leopold*), 964 F.3d 1121, 1128 (D.C. Cir. 2020), as well as documents "properly filed by a litigant seeking a judicial decision," *Marden's Ark, Inc. v. UnitedHealth Grp., Inc.*, No. 19-cv-1653-PJS-DTS, 2021 WL 1846803, at *5 (D. Minn. Apr. 15, 2021). *See also Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*, 960 F. Supp. 2d 1011, 1013 (D. Minn. 2013) ("[T]he public has a right to access documents that are submitted to the Court and that form the basis for judicial decisions.").

The strength of the presumption of access that attaches to a judicial record depends on the document's "role . . . in the exercise of Article III judicial power" and the "resultant

value of such information to those monitoring the federal courts." *IDT Corp.*, 709 F.3d at 1224 (citation omitted). Materials that play "only a negligible role in the performance of Article III duties" are subject to a low presumption of access. *See id.* By contrast, documents that are "valuable to the public's confidence in the judicial system" and its "ability to monitor, measure, and hold accountable the federal courts" carry a "strong presumption" of access. *Skky, LLC v. Facebook, Inc.*, 191 F. Supp. 3d 977, 980–81 (D. Minn. 2016).

A judicial record's presumption of access is overcome only when the interests served by the common law right of access are outweighed by the interests served by "maintaining confidentiality of the information sought to be sealed." *IDT Corp.*, 709 F.3d at 1223. The Eighth Circuit has cautioned that "only the most compelling reasons can justify non-disclosure of judicial records." *In re Neal v. Kan. City Star*, 461 F.3d 1048, 1053 (8th Cir. 2006) (citation omitted); *see also Truong v. UTC Aerospace Sys.*, 439 F. Supp. 3d 1171, 1172 (D. Minn. 2020) ("Unless there is a compelling reason to keep information secret, the public has a right to know what arguments and evidence have been presented to a court, so that the public can fully assess the court's exercise of its authority.").

### A. Pen/trap and 2703(d) materials are judicial records, the common law right of access attaches, and the presumption of access is strong.

Pen/trap and 2703(d) materials are judicial records to which the common law right of access applies. *First*, pen/trap orders and 2703(d) orders are judicial records because they are court orders. *See Leopold*, 964 F.3d at 1128 (expressing "no doubt" that pen/trap

and 2703(d) orders are judicial records); *see also Appelbaum*, 707 F.3d at 290 (holding that 2703(d) orders are judicial records). *Second*, the documents that the government files to obtain pen/trap and 2703(d) orders are judicial records because they are "properly filed by a litigant seeking a judicial decision." *Marden's Ark*, 2021 WL 1846803, at *5; *see also Leopold*, 964 F.3d at 1128 (concluding that pen/trap and 2703(d) materials are judicial records because they are "intended to influence the court, and the relevant orders are certainly decisions about them" (quotation marks omitted)); *Appelbaum*, 707 F.3d at 291 (concluding that "2703(d) motions are 'judicial records' because they were filed with the objective of obtaining judicial action or relief pertaining to § 2703(d) orders").

Moreover, the presumption of access is strong because pen/trap and 2703(d) materials are central to "the exercise of Article III judicial power" and have significant value to "those monitoring the federal courts." *See IDT Corp.*, 709 F.3d at 1224. "Court decisions are the quintessential business of the public's institutions." *Leopold*, 964 F.3d at 1128 (quotation marks omitted). The materials the government files in support of the orders it seeks provide necessary context for understanding those decisions. They explain why the government believes the surveillance at issue is necessary and present its argument for why it has met the legal standard set out in the relevant statute. Pen/trap and 2703(d) materials are therefore "valuable to the public's confidence in the judicial system and the public's ability to monitor, measure, and hold accountable the federal courts." *See Skky*, 191 F. Supp. 3d at 980–81.

As the D.C. Circuit concluded in *Leopold*, nothing about the PRA or SCA displaces this Court's usual test for analyzing whether the judicial documents should be available to

the public pursuant to common law. *Leopold*, 964 F.3d at 1129. Though the PRA does displace the usual common law test to some extent, by mandating that pen/trap materials be initially sealed, the PRA also contemplates unsealing, specifying that a pen register order "shall direct that . . . the order be sealed until otherwise ordered by the court." 18 U.S.C. § 3123(d); *see also Leopold*, 964 F.3d at 1130. And the D.C. Circuit correctly concluded that "by not specify[ing] a standard for making the unsealing determination, it did not displace the common law standard" normally applied in that Circuit. *Leopold*, 964 F.3d at 1130. The SCA contains no sealing provisions whatsoever and does not require any sealing of 2703(d) orders. *See* 18 U.S.C. §§ 2701–13; *see also Leopold,* 964 F.3d at 1129 (finding that the "SCA does not require the sealing of . . . 2703(d) orders and applications in support thereof . . . [n]or does it mention sealing at all"). For this statute, too, the D.C. Circuit concluded, correctly, that it should apply its normal common-law analysis. *Leopold*, 964 F.3d at 1129.

### B. The strong common law presumption of access to pen/trap and 2703(d) materials is not overcome.

No "compelling reasons" outweigh the strong common law presumption of access to pen/trap and 2703(d) materials. *See In re Neal,* 461 F.3d at 1053. This District's practice of sealing pen/trap and 2703(d) materials indefinitely substantially "interfere[s] with the interests served by the common-law right of access." *See IDT Corp.*, 709 F.3d at 1223. Journalists and the public currently have no way of determining what information has been sought by the government pursuant to pen/trap and 2703(d) orders, how many such orders have been granted or denied, or what information was presented to justify the orders. This

is vital information for the press and the public to fulfill their oversight functions, particularly because pen/trap and 2703(d) orders implicate issues of public interest such as personal privacy, policing practices, and criminal justice. Thus, this District's current practice hampers the public's ability to "keep a watchful eye" on the scope of electronic surveillance conducted by the government. *See id.* at 1222 (quoting *Nixon*, 435 U.S. at 598).

To be sure, there may be "salutary interests" that necessitate the sealing of specific pen/trap or 2703(d) materials in certain cases, but the requested relief does not implicate those interests. When an investigation involving specific pen/trap or 2703(d) materials would be compromised by unsealing at the six-month mark, the government can request a sealing extension by demonstrating a need for continued sealing. *Cf. Appelbaum,* 707 F.3d at 294 (denying petitioner's request to unseal 2703(d) order pertaining to an ongoing investigation, since the common law right of access was outweighed by the government's interest in maintaining the secrecy of that ongoing investigation). However, there is no compelling reason for a blanket policy of indefinite sealing. *See Leopold*, 964 F.3d at 1134 (holding that the presumption of access to pen/trap and 2703(d) materials outweighed competing interests in sealing beyond the underlying investigations).

Indefinite sealing of pen/trap and 2703(d) materials conflicts with the public's interest in judicial openness and accountability. The strong common law presumption of access attaches to these materials and is not overcome; this Court should provide for unsealing of these materials.

28

### III. The First Amendment and common law rights of access require this District to docket amended and denied surveillance applications, and to unseal the underlying materials following the same procedures as for granted applications.

This Court's current practice is to docket applications for Rule 41 search warrants, SCA search warrants, § 3117 tracking device warrants and orders, and (as of January 2022) that are granted, but not to docket applications the government seeks under these authorities that are denied or for which judges require amendments. Oct. 22 Tr. 7:2–9, 23:11–16. How amended or denied pen/trap orders and 2703(d) applications and orders are docketed is less clear because those dockets were previously entirely sealed, but as of January 2022 these applications are initially filed on CM/ECF. *See* U.S. Dist. Ct., D. Minn., *Criminal Case Opening Procedure for the United States Attorney's Office: Pen Registers, Trap & Trace, and Applications Pursuant to 18:2703(d)* (rev. Jan. 2022).

For surveillance applications filed pursuant to all of these authorities, the First Amendment and common law rights of access require docketing regardless of whether the government's application is successful. Moreover, once these materials are docketed, the First Amendment and common law rights of access require the Court to apply the same unsealing procedures to amended and denied applications as it applies to granted applications.

Courts have a long history of maintaining docket sheets for matters that come before them. "Since the first years of the Republic, state statutes have mandated that clerks maintain records of judicial proceedings in the form of docket books, which were presumed open either by common law or in accordance with particular legislation." *Hartford Courant*

29

*Co. v. Pellegrino*, 380 F.3d 83, 94 (2d Cir. 2004); *see also Globe Newspaper v. Fenton*, 380 F.3d 83, 91–92 (D. Mass. 1993) (describing that the Massachusetts state statutory duty of clerks to maintain dockets stretches back to at least 1786).

Federal rules of procedure likewise impose upon courts the obligation to keep records of matters that come before them. While federal procedural rules do not cover the government's *ex parte* applications to engage in surveillance, it is nonetheless instructive that both the criminal and civil rules address the requirement that the Clerk of Court maintain a docket. Federal Rule of Criminal Procedure 55 requires the Clerk of Court to "keep records of criminal proceedings," which must "record[] every court order or judgement and the date of entry." Fed. R. Crim. P. 55. Federal Rule of Civil Procedure 79, too, mandates that the Clerk "enter each civil action in the docket," including "papers filed with the clerk" and "orders . . . and judgments." Fed. R. Civ. P. 79(a)(1)–(2).

Given the long-established and deeply entrenched practice of Clerks maintaining dockets, and the clear link between maintenance of a docket and the ability of the public to understand the operation of courts, it is unsurprising that there is extensive case law recognizing the First Amendment and common law rights of access to docket sheets. In *Gunn*, for example, the Eighth Circuit noted that the "case dockets maintained by the clerk of the district court are public records" and ordered the dockets unsealed. 855 F.2d at 575. Many courts have recognized the common law right to docket sheets. *Leopold*, 964 F.3d at 1129; *United States v. Criden*, 675 F.2d 550, 559 (3d Cir. 1982); *United States v. Mendoza*, 698 F.3d 1303, 1304 (10th Cir. 2012). Though the Eighth Circuit has not

weighed in,[8] other circuits have found that the First Amendment also requires public access to docket sheets. *See, e.g.*, *Globe Newspaper Co. v. Pokaski*, 868 F.2d 497, 499–500, 505 (1st Cir. 1989); *Hartford Courant Co.*, 380 F.3d at 96; *Doe v. Pub. Citizen*, 749 F.3d 246, 268 (4th Cir. 2014); *United States v. Valenti*, 987 F.2d 708, 715 (11th Cir. 1993); *but see In re Search of Fair Fin.*, 692 F.3d 424, 433 (6th Cir. 2012) (rejecting First Amendment right of access to docket sheets but recognizing common law right to same).

This District must docket denied and amended applications, not just applications that are granted. The existence of a common law or First Amendment right does not depend on whether the government has prevailed on the first try. Moreover, the value of disclosure is arguably even greater when the court denies a government application or requires that it be amended. As the Eighth Circuit explained in *Gunn*, access is "important to the public's understanding of the function and operation of the judicial process and the criminal justice system and may operate as a curb on prosecutorial or judicial misconduct." *Gunn*, 855 F.2d at 573. Understanding the circumstances in which a government application must be

---

[8] In one unpublished case, the Eighth Circuit affirmed the dismissal of an action under 42 U.S.C. § 1983 by a Missouri inmate against a state court clerk who he claimed had refused to provide him a copy of the docket sheet in his underlying criminal case. *Jackson v. Malecek*, 1993 WL 315429, 2 F.3d 1154 (8th Cir. 1993) (per curiam) (unpublished). The court reasoned that the clerk's "alleged action did not impede Jackson's ability to file a habeas corpus petition in federal court and to request the document during case discovery." *Id.* Even if correctly decided, the *Jackson* case is distinguishable because failing to create docket sheets for denied applications does indeed negatively impact the Reporters Committee by restricting its ability—and the ability of journalists generally—to access information about the functioning of the judicial system as a whole and in individual cases.

amended or in which it is denied outright provide needed insight into how courts supervise the executive's use of statutory surveillance authorities.

Finally, once amended and denied applications are docketed, they should be subject to the same unsealing procedures as applications that are successful. The arguments for a First Amendment and common law right of access, presented above, are at least as powerful when applied to applications that have been amended or denied. To the extent the government has context-specific reasons for longer periods of sealing, it is welcome to present those arguments on a case-by-case basis, as it already does for Rule 41 search warrant and SCA search warrants that are granted.

## CONCLUSION

For the foregoing reasons, the Reporters Committee respectfully requests this Court grant its Amended Application and enter an Order to apply the same docketing and unsealing practices it currently uses for SCA and Rule 41 search warrants to pen/trap and 2703(d) materials. Specifically, the Reporters Committee respectfully requests that the Clerk's Office presumptively unseal, after six months, all pen/trap and 2703(d) materials, absent a showing of need for continued sealing by the USAO. The Reporters Committee further request that the Clerk's Office docket amended and denied applications, orders, and other materials pertaining to Rule 41 search warrants, SCA search warrants, § 3117 tracking device warrants and orders, pen/trap orders, and 2703(d) orders.

Dated: January 28, 2022                 By:   */s/ Catherine Crump*\*
                                              Catherine Crump (*pro hac vice*)
                                              Megan Graham (*pro hac vice*)
                                              Samuelson Law, Technology and
                                                 Public Policy Clinic
                                              UC Berkeley, School of Law
                                              433 Law Building (North Addition)
                                              Berkeley, CA 94720-7200
                                              Tel: (510) 292-6860
                                              ccrump@clinical.law.berkeley.edu

                                              */s/ Leita Walker*
                                              Leita Walker (387095)
                                              Ballard Spahr LLP
                                              2000 IDS Center 80 South 8th Street
                                              Minneapolis, MN 55402-2119
                                              Tel: (612) 371-3211
                                              Fax: (612) 371-3207
                                              walkerl@ballardspahr.com

                                              *Attorneys for Petitioner*

---

\* The Reporters Committee and Samuelson Clinic thank clinical law students Jonathan Abrams, Jennifer Sun, and Daniela del Rosario Wertheimer for their contributions to this memorandum.