## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In the Matter of the Application of the Reporters Committee for Freedom of the Press to Unseal Certain Search Warrant Materials | No. 20-mc-00082 (PJS/TNL)<br><br>**REPLY MEMORANDUM IN SUPPORT OF AMENDED APPLICATION** |

**TABLE OF CONTENTS**

**TABLE OF CONTENTS** ...................................................................................... **i**

**TABLE OF AUTHORITIES** ............................................................................ **ii**

**BACKGROUND** ............................................................................................... **2**

**ARGUMENT** ..................................................................................................... **3**

    I.    The Reporters Committee has standing to pursue this action. ............................ 3

    II.    The First Amendment right of access applies to pen/trap and 2703(d) materials. ...................................................................................................... 4

    III.   The common law right of access applies to pen/trap and 2703(d) materials and has not been overcome. ........................................................................... 8

    IV.  This Court must docket amended and denied applications and unseal them according to the same procedures as for granted applications. ........................... 11

**CONCLUSION** ............................................................................................... **12**

## TABLE OF AUTHORITIES

**CASES**

*Carlson v. United States*,
   837 F.3d 753 (7th Cir. 2016)...............................................................................3, 4, 7

*Carpenter v. United States*,
   138 S. Ct. 2206 (2018) ..............................................................................................2

*Doe v. Pub. Citizen*,
   749 F.3d 246 (4th Cir. 2014)......................................................................................3

*Flynt v. Lombardi*,
   885 F.3d 508 (8th Cir. 2018)......................................................................................9

*Hartford Courant Co. v. Pellegrino*,
   380 F.3d 83 (2d Cir. 2004).................................................................................11, 12

*In re Appl. for Pen Register & Trap/Trace Device with Cell Site Location Auth.*,
   396 F. Supp. 2d 747 (S.D. Tex. 2005) .......................................................................3

*In re Appl. of Leopold to Unseal Certain Elec. Surveillance Appls. & Ords.* (*Leopold*),
   964 F.3d 1121 (D.C. Cir. 2020) .........................................................................5, 6, 8

*In re Appl. of United States for Ord. Pursuant to 18 U.S.C. § 2703(d)* (*Appelbaum*),
   707 F.3d 283 (4th Cir. 2013)......................................................................................8

*In re Granick*,
   388 F. Supp. 3d 1107 (N.D. Cal. 2019) .....................................................................4

*In re Neal v. Kan. City Star*,
   461 F.3d 1048 (8th Cir. 2006).....................................................................................9

*In re Pet. of Trib. Co.*,
   784 F.2d 1518 (11th Cir. 1986)...................................................................................4

*In re Sealing & Non-Disclosure of PR/TT/2703(d) Ords.*,
   562 F. Supp. 2d 876 (S.D. Tex. 2008) .......................................................................6

*In re Search Warrant for Secretarial Area Outside Off. of Gunn* (*In re Gunn*),
   855 F.2d 569 (8th Cir. 1988).............................................................................5, 6, 11

*Nixon v. Warner Commc'ns, Inc.*,
   435 U.S. 589 (1978).....................................................................................................1

*Socony-Vacuum Oil Co.*,
  310 U.S. 150 (1940)........................................................................................7

*United States v. Aldawsari*,
  683 F.3d 660 (5th Cir. 2012)...........................................................................3

*United States v. Dionisio*,
  410 U.S. 1 (1973).............................................................................................5

*United States v. Ellis*,
  270 F. Supp. 3d 1134 (N.D. Cal. 2017) ..........................................................3

*United States v. Warshak*,
  631 F.3d 266 (6th Cir. 2010).............................................................................3

*United States v. Webbe*,
  791 F.2d 103 (8th Cir. 1986).............................................................................9

*United States v. Williams*,
  504 U.S. 36 (1992)...........................................................................................5

*WaterLegacy v. USDA Forest Service*,
  No. 17-cv-276-JNE-LIB, 2019 WL 4757663 (D. Minn. Sept. 30, 2019)........3

## STATUTES

18 U.S.C. § 3123...............................................................................................6

## PROCEDURAL RULES

LR 5.6(a)............................................................................................................2

LR 49.1(c)..........................................................................................................2

LR 49.1(d)..........................................................................................................2

**OTHER AUTHORITIES**

Stephen W. Smith, *Kudzu in the Courthouse: Judgments Made in the Shade*,
  3 Fed. Cts. L. Rev. 177 (2009)......................................................................................10

Petitioner Reporters Committee for Freedom of the Press (the "Reporters Committee") respectfully submits this reply memorandum in further support of its Amended Application to Unseal Certain Surveillance Orders and Related Materials. Am. Appl., ECF No. 35; *see also* Pet.'s Mem. in Supp. of Am. Appl. ("Pet.'s Br."), ECF No. 36.[1]

Through its amended application, the Reporters Committee requests that this Court exercise its discretion over its record-making and record-publishing processes. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978) ("Every court has supervisory power over its own records and files[.]"). As described below, access to pen/trap and 2703(d) materials, and to amended and denied applications for the materials related to five categories of surveillance requests mentioned in the Reporters Committee's opening brief,[2] vindicates a core purpose of the public's right of access: allowing the public to oversee the executive and judiciary. The public's right of access must be taken even more seriously because many of the records sought in this application are currently indefinitely sealed or are never docketed. The government's arguments to the contrary fail to justify the policy-level sealing that it argues for, and the appropriate process would be the default unsealing rule and case-by-case subsequent assessment that the Reporters Committee seeks.

---

[1] This memorandum uses abbreviations as defined in the Reporters Committee's opening brief. *See* Pet.'s Br.

[2] Those are: applications, supporting materials, and orders in pen/trap, 2703(d), Rule 41 search warrant, SCA search warrant, and § 3117 tracking device warrant and order cases.

## BACKGROUND

The Reporters Committee relies on the background set forth in its opening brief. *See* Pet.'s Br. 2–13. Although the Reporters Committee generally agrees with the Government's description of the PRA and SCA, the Reporter's Committee disagrees with two points in the Government's Background section:

*First*, the Government's characterization of Local Rule 49.1 as a "mandatory-sealing rule," Gov't's Resp. 9, ECF No. 44, is misleading. By default, materials cannot be filed under seal in this District without prior permission from the court or a statute or rule permitting it. *See* LR 5.6(a)(1) ("A document may be filed under seal in a civil case only as provided by statute or rule, or with leave of court."); LR 49.1(d) ("A document not listed in LR 49.1(c) may not be filed under seal except by order of the court."). Local Rule 49.1(c) changes this default for a subset of materials—including pen/trap and 2703(d) applications, supporting materials, and orders—and states those materials must be *initially* filed under seal. LR 49.1(c)(1)(B). However, the rule also indicates those materials may be unsealed "by court order." LR 49.1(c)(1). The Reporters Committee seeks such an order here.

*Second*, contrary to the Government's assertion, materials the Government seeks via pen/trap and 2703(d) applications is sometimes protected by the Fourth Amendment. *Compare* Gov't's Resp. 8 (stating that records obtained under pen/trap and 2703(d) orders "are not subject to a legitimate expectation of privacy and are therefore not protected by the Fourth Amendment"), *with, e.g.*, *Carpenter v. United States*, 138 S. Ct. 2206, 2221 (2018) (holding collection of historic cell site location information under a 2703(d) order violated the Fourth Amendment); *United States v. Warshak*, 631 F.3d 266, 288 (6th Cir.

2010) (holding use of 2703(d) order to obtain contents of stored emails violates the Fourth Amendment); *United States v. Ellis*, 270 F. Supp. 3d 1134, 1149 (N.D. Cal. 2017) (finding use of a pen/trap order to gather information using a cell site simulator violated the Fourth Amendment); *In re Appl. for Pen Register & Trap/Trace Device with Cell Site Location Auth.*, 396 F. Supp. 2d 747, 760 (S.D. Tex. 2005) (finding neither pen/trap nor 2703(d) orders permit collection of real-time location data).

## ARGUMENT

### I.   The Reporters Committee has standing to pursue this action.

Contrary to the Government's assertion, Gov't's Resp. 12–17, the Reporters Committee has standing to pursue this action. It is well established that members of the public and the media have standing to seek unsealing of judicial records.[3] *See, e.g.*, *Carlson v. United States*, 837 F.3d 753, 757–58 (7th Cir. 2016) (holding plaintiff had "standing to assert his claim to the grand-jury transcripts, because they are public records to which the public may seek access, even if that effort is ultimately unsuccessful"); *Doe v. Pub. Citizen*, 749 F.3d 246, 263–64 (4th Cir. 2014) (holding that "informational harm" caused by an inability to access judicial materials confers standing on non-profit organizations that work on issues related to the substance of sealed court filings); *United States v. Aldawsari*, 683 F.3d 660, 664 (5th Cir. 2012) (holding that journalist had standing to challenge "gag order"

---

[3] The Government cites favorably to the fact-bound analysis in *WaterLegacy v. USDA Forest Service*, No. 17-cv-276-JNE-LIB, 2019 WL 4757663 (D. Minn. Sept. 30, 2019). Gov't's Resp. 16 n.6. That case, however, arises in the environmental law context, whereas the cases the Reporters Committee relies on in this reply address standing in the context of the public's First Amendment and common law rights of access to court records.

entered in criminal proceeding); *In re Pet. of Trib. Co.*, 784 F.2d 1518, 1521 (11th Cir. 1986) (stating that "[t]he press has standing to intervene in actions to which it is otherwise not a party in order to petition for access to court proceedings and records" in context of criminal proceeding). Indeed, in the only case to expressly address standing in the context of the right of access to pen/trap and 2703(d) materials, the court concluded that plaintiffs had standing. *In re Granick*, 388 F. Supp. 3d 1107, 1117 (N.D. Cal. 2019) ("Only a colorable claim is required, regardless of its strength, for if the courts were to require more than a colorable claim, 'we would decide the merits of the case before satisfying ourselves of standing.'" (quoting *Carlson*, 837 F.3d at 758)).

Here, the Reporters Committee has a colorable claim that it is entitled to access the sealed surveillance applications, supporting materials, and orders sought. It is suffering an ongoing injury-in-fact that is fairly traceable to this court's sealing of the records and redressable through the relief sought, and thus has standing to pursue this action.

## II.   The First Amendment right of access applies to pen/trap and 2703(d) materials.

To determine whether the First Amendment right of access applies to a given type of proceeding or record, courts look to two complementary considerations: "experience" and "logic."[4] *See In re Search Warrant for Secretarial Area Outside Off. of Gunn* (*In re*

---

[4] As the Reporters Committee has explained, the circuits vary in how they weigh the "history" and "logic" considerations—particularly when faced with relatively new types of records and proceedings. Pet.'s Br. 14–15. The Government contends that in the Eighth Circuit, the First Amendment right of access must be grounded in both history and logic. Gov't's Resp. 19–20. As the Reporters Committee stated, however, "[t]he Eighth Circuit has not opined on the *relative importance* of" each consideration. Pet.'s Br. 14 (emphasis added). And, in any event, both considerations support a constitutional right of access here.

*Gunn*), 855 F.2d 569, 573 (8th Cir. 1988). Both considerations weigh in favor of recognizing a qualified First Amendment right of access to pen/trap and 2703(d) materials. *See* Pet.'s Br. 13–23. The Government's arguments to the contrary are unavailing.

According to the Government, experience weighs against recognizing a First Amendment right of access to pen/trap and 2703(d) materials because such materials "are akin to grand jury subpoenas," Gov't's Resp. 25, which have historically been presumed secret. The Government's comparison is inapt. As the D.C. Circuit recognized, "the grand jury context is unique." *In re Appl. of Leopold to Unseal Certain Elec. Surveillance Appls. & Ords.* (*Leopold*), 964 F.3d 1121, 1133 (D.C. Cir. 2020). Indeed, grand juries operate "at arm's length" from the courts, *United States v. Williams*, 504 U.S. 36, 47 (1992), and the grand jury's "historic role [is] as a protective bulwark standing solidly between the ordinary citizen and an overzealous prosecutor," *United States v. Dionisio*, 410 U.S. 1, 17 (1973). There is no comparable bulwark in the context of applications for pen/trap and 2703(d) orders, nor can the process of applying for such orders be fairly characterized as at "arm's length" from the judiciary. To the contrary, when the Government seeks pen/trap and 2703(d) orders, it applies directly to the court on an *ex parte* basis—as it does when seeking Rule 41, SCA, and § 3117 tracking device warrants. Quite simply, "grand jury processes are not amenable to the practices and procedures employed in connection with other

judicial proceedings" or records, including electronic surveillance records. *Leopold*, 964

F.3d at 1133.[5]

On the "logic" consideration, the Government's reliance on the inapt grand jury

comparison, Gov't's Resp. 25–27, is inappropriate for the reasons stated above.

Additionally, the Government is incorrect in arguing that the First Amendment right of

access does not apply because the statutory schemes of the PRA and SCA do not "suggest[]

a significant role for public access." *See* Gov't's Resp. 30–31. The SCA does not require

sealing of applications, supporting materials, or orders in the first instance. *See In re*

*Sealing & Non-Disclosure of PR/TT/2703(d) Ords.*, 562 F. Supp. 2d 876, 879 (S.D. Tex.

2008). And unsealing is explicitly contemplated by the PRA. 18 U.S.C. § 3123(d) (stating

that pen/trap orders should be sealed "until otherwise ordered by the court"). These sealing

considerations are consistent with the public being able to access the materials sought, and

such access is important because it informs the public's understanding of the criminal legal

system and enables scrutiny of how and when the Government invokes these surveillance

authorities.

---

[5] The Government's additional argument that the Reporters Committee's reliance on *In re Gunn* to show there is a history of access is "misplaced," Gov't's Resp. 24, is simply wrong. In that case, the Eighth Circuit acknowledged that a qualified First Amendment right of access to court records exists, but that it had been overcome in that instance after a close review of the facts of the case. *See In re Gunn*, 855 F.2d at 573–75. The Reporters Committee relies on *In re Gunn* to show that the First Amendment right of access applies to the materials at issue and that there is a need for a similar individualized review to assess whether sealing is appropriate in a particular case.

Furthermore, the Government concedes that wholesale perpetual sealing—which effectively happens with most pen/trap and 2703(d) materials today—is not necessary.[6] *See* Gov't's Resp. 27–30 (noting that "sometimes" longer-term sealing is appropriate). Indeed, as discussed in the Reporters Committee's opening brief, adequate alternatives exist that rebut the need for continued, wholesale sealing of these materials. For one, the Government can seek an extension of sealing in matters where there is a particularized need beyond the proposed 180-day default. A default rule should be established that provides for the public's access to the materials on a reasonable timeframe; when continued sealing is appropriate, the Government can make an individualized showing to that effect. Alternatively, the Government could narrowly redact information with adequate justification. For example, in cases where a pen/trap or 2703(d) order did not lead to an indictment, it might be appropriate to redact a targeted phone number or the identifying portion of an email address, while leaving unsealed the name of the company served with the request and general information about the type of data sought under the order.

Nor does the Government's argument that unsealing pen/trap and 2703(d) materials may disrupt ongoing investigations pass muster. As noted in its brief, the Reporters Committee has requested that the same default sealing rules that apply to Rule 41 warrants, SCA warrants, and § 3117 tracking device warrants and orders be applied to pen/trap and

---

[6] Not even grand jury materials must be kept secret indefinitely; the "release of sealed grand jury materials rests in the sound discretion of the trial court and disclosure is wholly proper where the ends of justice require it." *Carlson*, 837 F.3d at 762 (cleaned up) (quoting *Socony-Vacuum Oil Co.*, 310 U.S. 150, 233–34 (1940)).

2703(d) materials. That is, as detailed above, the Government could seek continued sealing based on an individualized showing of need, including that unsealing would harm an ongoing investigation. The Reporters Committee's proposal of a 180-day default for unsealing mirrors existing District practice, and the Government failed to propose an alternative time frame it felt would be more appropriate.

### III.   The common law right of access applies to pen/trap and 2703(d) materials and has not been overcome.

The public also has a common law right of access to pen/trap and 2703(d) materials that is not overcome. The Government's arguments to the contrary are unavailing.

As an initial matter, the Government does not dispute that the records sought here are "judicial records" and that the common law presumption thus attaches.[7] *See, e.g.*, *Leopold*, 964 F.3d at 1129; *In re Appl. of United States for Ord. Pursuant to 18 U.S.C. § 2703(d)* (*Appelbaum*), 707 F.3d 283, 291 (4th Cir. 2013). Instead, the Government focuses on the strength of the presumption and whether it is overcome. *See* Gov't's Resp. 33–38.

As an initial matter, the Government's assertion that Reporters Committee "mischaracterizes" the applicable standards in common law right of access cases, Gov't's Resp. 34, is without merit. Though the Eighth Circuit declined to adopt a "strong presumption" in favor of the common law right of access in *United States v. Webbe*,

---

[7] The Government's attempts to distinguish *Leopold* are misplaced. *See* Gov't's Resp. 37–38. The D.C. Circuit in *Leopold* focused on retrospective relief because the issues on appeal "only involve[d] materials from closed investigations." *Leopold*, 964 F.3d at 1126. Further, *Leopold*'s reliance on existing D.C. Circuit precedent does not mean that the result should be different here.

791 F.2d 103, 106 (8th Cir. 1986), a case decided by the court two decades later resolutely

clarified that "only the most compelling reasons can justify non-disclosure of judicial

records." *In re Neal v. Kan. City Star*, 461 F.3d 1048, 1053 (8th Cir. 2006) (citation

omitted). While *In re Neal* also addresses a statutory right of access in the bankruptcy

context, its discussion of the need for a "compelling reason" to justify non-disclosure is not

bankruptcy-specific. *See id.* at 1053; *see also Flynt v. Lombardi*, 885 F.3d 508, 511 (8th

Cir. 2018) (stating that "compelling reasons" are needed to overcome the "presumption of

public access to judicial records" in case seeking access to Missouri's lethal injection

protocol) (citing *In re Neal*, 461 F.3d at 1053)).

Deference to district courts' decisions on whether the common law right of access

has been overcome in a particular case does not logically equate to "the common law

presumption is weak," despite the Government's implication to the contrary, *see* Gov't's

Resp. 34–35. Nor is deference incompatible with an acknowledgment that the public's

interest in access to court records is an important one that can only be overridden by

particularly strong interests on the side of secrecy. As the Reporters Committee articulated

in its opening brief, the strength of the presumption of access is informed by the role of a

particular record to the court's decision-making process. *See* Pet.'s Br. 24–25. The

materials at issue here—pen/trap and 2703(d) applications, supporting materials, and the

resultant orders—are central to (or reflective of) the court's determinations and

interpretations of the PRA and SCA.

The Government's arguments that "important policy reasons," "the privacy interests

of individuals subject to government process," and the statutory schemes of the PRA and

SCA overcome the public's right to access these materials are unpersuasive for two reasons. Gov't's Resp. 36–37, 39–40. *First*, as the Reporters Committee argued in its opening brief, there is a strong public interest in access to this material that the Government has failed to overcome. Pet.'s Br. 23–24, 27–28. Access to pen/trap and 2703(d) materials provides the public and press with a unique view into the Government's understanding of what the PRA and SCA permit it to do, and how courts interpret these statutes. Additionally, the Government is sometimes wrong about what can properly be sought under pen/trap and 2703(d) orders, and access to these materials is one of the few ways the public can conduct oversight of emerging approaches to surveillance. *See* Stephen W. Smith, *Kudzu in the Courthouse: Judgments Made in the Shade*, 3 Fed. Cts. L. Rev. 177 (2009).

*Second*, the appropriate approach is to balance the interests articulated by the Government and the public's interest in access on a case-by-case basis. This individualized balancing would adequately protect private or sensitive information through case-specific sealing or narrow redactions. As detailed above, redaction of personally identifiable information might be appropriate in instances where information is obtained but charges are not ultimately filed. The public's interest in conducting judicial oversight and ensuring that these statutes are appropriately used mean that the default rule should be openness and that secrecy is only appropriate upon an individualized showing.

**IV.    This Court must docket amended and denied applications and unseal them according to the same procedures as for granted applications.**

The First Amendment and common law rights of access require the District to docket amended or denied surveillance applications, just as it dockets successful applications. Pet.'s Br. 29. Although courts have used various methodologies to determine when courts must maintain public dockets, *see Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 92–96 (2d Cir. 2004) (summarizing approaches), no court has ever concluded that the necessity of maintaining a docket for a matter depends on that matter's *outcome*.

The Government's argument that docketing amended or denied applications would be of "little benefit" because "what matters are the warrants that are issued and executed," Gov't's Resp. 42, affords too little weight to the public's strong interest in monitoring electronic surveillance applications and orders; this interest applies with at least equal force when the Government and judiciary disagree about whether a request for surveillance meets relevant legal standards. Pet.'s Br. 31; *cf. In re Gunn*, 855 F.2d at 573 (explaining that public access to search warrant materials may function to curb prosecutorial misconduct).

The Government also argues that the District need not create dockets for amended and denied applications because the public has no right of access to pen/trap or 2703(d) materials whatsoever. Gov't's Resp. 41 ("These are not inherently public matters, nor should they be."). But this is not responsive to the Reporters Committee's argument, which is that the public has a right of access, under both the First Amendment and common law, to amended or denied applications; therefore, the court needs to docket those applications.

11

As the Government appears to concede, "the dockets for judicial proceedings [and records] that are themselves required to be open must also be open." Gov't's Resp. 42. This conclusion also makes sense as a matter of logic: it is difficult to see how the public could vindicate its access rights if documents and proceedings are not even docketed, so that the public knows they exist. *Cf. Hartford Courant Co.*, 380 F.3d at 94 ("Sealed docket sheets would also frustrate the ability of the press and the public to inspect those documents, such as transcripts, that we have held presumptively open.").

## CONCLUSION

For the foregoing reasons and those detailed in its opening brief, the Reporters Committee respectfully requests this Court grant its Amended Application and enter an order to apply the same docketing and unsealing practices it currently uses for SCA and Rule 41 search warrants to pen/trap and 2703(d) materials. The Reporter's Committee further requests that the Court enter an order requiring that applications for Rule 41 search warrants, SCA search warrants, § 3117 tracking device search warrants and orders, pen/trap orders, and 2703(d) orders be docketed when they are presented to the Court, regardless of whether they are granted, denied, or must be amended.

Respectfully submitted,

Dated: March 25, 2022                      By:   */s/ Megan Graham**

Megan Graham (*pro hac vice*)
Catherine Crump (*pro hac vice*)
Samuelson Law, Technology and
   Public Policy Clinic
UC Berkeley, School of Law
353 Law Building
Berkeley, CA 94720-7200
Tel: (510) 664-4381
mgraham@clinical.law.berkeley.edu

*/s/ Leita Walker*
Leita Walker (387095)
Ballard Spahr LLP
2000 IDS Center 80 South 8th Street
Minneapolis, MN 55402-2119
Tel: (612) 371-3211
Fax: (612) 371-3207
walkerl@ballardspahr.com

*Attorneys for Petitioner*

---

* The Reporters Committee and Samuelson Clinic would like to thank clinical law student
Jennifer Sun for her contributions to this reply memorandum.